# AHMAD KESHAVARZ
*Attorney at Law*

16 COURT STREET, #2600
BROOKLYN, NY 11241

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (347) 308-4859
Fax: (877) 496-7809

2026

**VIA ECF**

Magistrate Judge Gary Stein
United States District Court,
Southern District of New York
500 Pearl Street
New York, NY 10007



> Re:  **Joint Status of Discovery Letter.**
> *Garcia v. Sperber Kahan Law Group PLLC, et al.,* **1:25-cv-08489-JGK**

Dear Judge Stein:

The undersigned represents Plaintiff in this action against Defendants Sperber Kahan Law Group PLLC, a debt collection law firm, and a principal Eric Kahan ("the Attorney Defendants"); Arthur Ransome Houses L.P. ("Arthur Ransome"), a landlord which retained, directly or through a servicer, the Attorney Defendants to collect rental arrears against consumers including the Plaintiffs for debts which did not exist either in their entirety or in their alleged forms; and Prestige Management, Inc. ("Prestige"), a real estate management company which managed and oversaw Arthur Ransome's residential portfolio. Defendant Arthur Ransome has defaulted.

This joint letter is filed in accordance with the Court's April 17, 2026 ECF Order that by "no later than May 7, 2025, the parties shall submit a joint status report advising the Court as to the status of discovery and whether the Court's intervention remains necessary and, if so, as to what issues."[1]  This joint letter is also in compliance the Court's ECF Order of May 11, 2026 that "Plaintiff and the remaining defendants shall file letters responding to Prestige Management's letter, and otherwise advising the Court on the status of discovery, and whether the Court's intervention remains necessary as to any outstanding discovery issues."

### A. Procedural history

On February 13, 2026 Plaintiff served her first set of discovery demands on Defendants. *See* **Exhibit A**. The deadline to answer was March 15, 2026. Having received no response to the requests for production and interrogatories, on April 1 Plaintiff filed a motion [Dkt. No. 56] to compel answers. On April 16 the Court held a hearing and ordered Prestige to serve answers and production by April 30. After Plaintiff agreed to a one-day extension, on May 1, Prestige served discovery responses and made a production of documents.

After obtaining consent from Plaintiff, the requests for production and interrogatories were answered the following day on May 1, 2026, at which time Defendant Prestige served

---

[1] The Parties apologize for not filing the joint letter of all parties on May 8.  Plaintiff and Prestige could not come to consensus as to joint language representing their respective views by that date.

discovery responses. The parties conferred as to discovery disputes. The parties request relief as outlined below.

**B.  Agreements between the Parties.**

The Parties entered into the following limited agreements:

1. The Parties extend by 30 days the deadline to move to amend the complaint and to join new parties from June 1 to July 1, and the deadline for defendants to assert additional defendants is extended from June 15 to July 15, given the various discovery disputes.

2. By May 15, the Attorney Defendants will give to Prestige unredacted copies of documents that the Attorney Defendants redacted based on attorney client privilege or work product to Prestige.  Prestige will review the unredacted documents and inform the Parties by May 22 which items, if any, it has instructed the Attorney Defendants to remove the redaction.

3. By May 14, the Attorney Defendants will produce any additional responsive emails, and the intake form of the subject account, subject to redactions for objections to privilege or work product, they have in their possession, custody or control;

4. This will include an unredacted copy of the intake form, if any; Prestige will inform the Attorney Defendants by May 22 on which items it directs the removal of the redactions.

5. By May 21, Prestige will supplement its document production and will amend its production responses for which it indicates it has produced responsive documents to affirmatively state that, after a reasonable inquiry, Prestige has produced all documents responsive to the document production demand that is in possession, custody, or control.

6. The deposition of Plaintiff will be after the previously noticed depositions of defendants.

7. Prestige will accept service of subpoenas of individuals currently employed by Prestige that Plaintiff seeks to depose outside of a 30(b)(6) deposition but reserve all rights to object to the depositions.

**C.  Items for which Plaintiff seeks Court intervention.**

Plaintiff seeks an order compelling Prestige to provide the additional information or documents within 7 days.

**1.  Interrogatory responses do not identify basic information.**

Plaintiff moves for a pre-motion conference to compel full written responses to her interrogatories and requests for production, and to compel the production of documents responsive to her discovery requests. Plaintiff's view is that the responses consisted in substantial part of blanket, boilerplate objections, and very limited document production. Prestige also objects to interrogatories as simple as a request to identify persons with knowledge of relevant facts (Interrogatory #1) and requests to identify the person or persons who made decisions regarding the rent demands, lawsuits, and collection notices sent to Plaintiff (Interrogatories #9-11, 16). *See* **Exhibit B** (Prestige's Interrogatory Responses). Prestige refers to its initial disclosure answers which identifies almost no one than the parties, and the Complaint, without

identifying any of them.

To "identify" a person is within Local Rule 33.3 because those would all be persons with knowledge of relevant facts, as well as present or last known address, or present or last known employer. As Prestige references the persons in the Complaint, it needs to "identify" each of them.

In conferring with Mr. Kest, in particular Plaintiff seeks Prestige to "identify" to following[2]:

- Detra Williams (who signed the stipulation that the debt was not owed)
- Devon Kelly (who was copied on the email forwarding the case for collections)
- Arlyane McGlashan (registered managing agent representative, and whose name appears in the housing court pleadings)
- An individual name Joanne (last name not disclosed) who Mr. Kest as being involved in some vague manner with the case.
- The persons at Ransome that Prestige is in communication with in relation to collection letters and collection litigation, including that against Ms. Garcia.
- The person who is the corporate officer at Ransome that signed the property management agreement with Prestige.

### 2. __Overruling boilerplate objections.__

Prestige stands solely on boilerplate objections as to Requests for Production # 5, 16, 20, 29, 30, 31, 32. At the last hearing the court warned Prestige that, at first review, it appeared to the court that the discovery was generally reasonable and relevant. **Exhibit C** (April 16, 2026 Hearing Transcript), pp. 20:2-20:9. These Requests for Production seek contracts governing the collection of the putative debt and the prosecution of the eviction lawsuits (#5, #20) and documents sufficient to identify persons involved in the collection efforts and any attempts to remedy the HQS Violations (#29, 31).

Prestige objects to every single request for documents as "vague, ambiguous, and overbroad," and asserts that it is not in possession of entire categories of documents—including "documents regarding Plaintiff," an unbelievable assertion when made by the property management company which manages Plaintiff's own apartment building. Prestige objects on the basis of attorney-client privilege but does not produce a privilege log.

 Boilerplate objections waive objections. Objections to requests on the grounds of insufficiently or ambiguously defined terms are routinely rejected where the objections claim an ambiguity in a term specifically defined in the discovery requests being objected to. *See e.g. Ghabra v. Palisades Collection, LLC*, 2022 WL 17489969 at *1 ("putative debt" not ambiguous where specifically defined in relation to a specific lawsuit identified by index number) (E.D.N.Y. 2022); *Bueno v. LR Credit 18, LLC*, 2017 WL 2712885 at *3 (documents related to plaintiff to be produced) (E.D.N.Y. 2017). Beyond this, Prestige's objections to Plaintiffs' RFPs #1-6 are

---

[2] The first three persons are referenced in the Complaint, and Prestige's Initial Disclosures state persons referenced in the Complaint individual "likely to have discoverable information—along with the subjects of that information— that the disclosing party may use to support its claims or defenses, knowledge of relevant facts that Prestige may use to support its claims and defenses." Therefore, they must be "identified."

exactly the sort of vague, unelaborated, boilerplate objections which are invalid under Fed. R. Civ. P. 34(b)(2)(B) and 34(b)(2)(C); *see e.g. Ghabra* at \*1 (court declines to consider insufficiently specific objections); *Fritz v. LVNV Funding, LLC*, 587 F.Supp.3d 1 at 5-6 (E.D.N.Y. 2022) (objection of vagueness is insufficient where unsupported by detailed affidavits or other specific evidence); *Grant v. Geller*, 2023 WL 2697739 at \*3 (requiring defendants provide detailed affidavits supporting otherwise vague objections) (E.D.N.Y. 2023).

Prestige also fails to produce various classes of documents which are routinely produced in wrongful debt collection cases as necessary to the accurate investigation and just resolution of the dispute, including account notes and other internal records regarding Plaintiffs (RFP #1); documents or information sufficient to identify every person involved in the collection of the debt (RFP #4); its retainer and/or collection agreements (RFP #5, 20); and identification of persons involved in the underlying state court matters and the related HQS Violations (RFP #29, 31).

Account notes and internal records regarding the plaintiff are routinely produced, including on motions to compel, in FDCPA cases: *see e.g. Oglesby*, 2020 WL 281338 at \*3; *Gomez v. Inovision-Medclr Portfolio Group, LLC*, 2014 WL 4243169 at \*1 (S.D.N.Y. 2014); *O'Connor*, 2009 WL 2697739 at \*1-2. So too are documents or information identifying persons involved in the collection of the underlying debt. *See e.g. O'Connor* at \*2; *Oglesby* at \*2-3; *Gomez* at \*1. Retainer and collection agreements are also routinely produced and compelled for production. *See e.g. Khan v. Midland Funding, LLC*, 956 F.Supp.2d 515, 516-17 (S.D.N.Y. 2013); *Gomez* at \*1; *Oglesby* at \*3; *Torres v. Toback, Bernstein & Reiss LLP*, 278 F.R.D. 321, 322-23 (E.D.N.Y. 2012). Policies and procedures, such as collection manuals, are likewise regularly produced. *See e.g. Oglesby* at \*4; *O'Connor* at \*2; *Khan* at 516-17; *Ghabra* at \*2-4.

To the extent Prestige objects on the basis of privilege, Prestige has provided no privilege log to support its claims of privilege.

In brief, the requests for production seek information regarding Plaintiff, the attempts to evict her via lawsuit for alleged nonpayment of rent she had already paid, Prestige's role in the aforementioned (including the calculations and bases for the amounts sought in each collection letter and lawsuit), and Prestige's policies, procedures, and practices with regards to evictions and Section 8.

As Prestige makes little but boilerplate objections, the Court should overrule these objections and order Prestige to produce responsive documents within 7 days. In response to Prestige's comments, Plaintiff does not move to compel answers to requests for production 16

### 3. Documents not in Prestige's "possession, custody or control."

Prestige stands on objections that responsive documents are not in their "possession, custody, or control" in response to Requests For Production #1, 2, 4, 13, 15, 17, 18, 19, 23, 24, 25, 26, 27, 28. These include requests as simple as "[d]ocuments regarding Plaintiff, each putative debt, or attempts to collect each putative debt" (#1), "[d]ocuments sufficient to demonstrate the identity of every person who was involved in attempts to collect the debt" (#4), "[c]orrespondence and other documents, including emails and texts, with any person regarding the putative debt or the Rent Seeking Documents [or] the Lawsuit" (#17), documents received from HPD regarding the HQS Violations at Plaintiff's apartment (#18), documents regarding payments received from Plaintiff (#19), and various requests regarding the basis for the amounts

4

sought in each lawsuit and collection letter (#23-28).

First, if Prestige believes responsive documents are in the possession of a third party, Prestige must identify the third party and then identify the documents they believe are in their possession. Exhibit A, p.7 (Plaintiff's Interrogatories) (Plaintiff's Interrogatory No. 5: "If documents responsive to Plaintiff's discovery demands are in the possession of a third party, identify that third party and the documents you believe in their possession.") Prestige's boilerplate objections must be overruled, and they must be ordered to provide fully responsive answers to Interrogatory # 5.

If Prestige is being coy and contending documents which are nominally in the name of Ransome but held at the parties' shared address at the same 1776 Eastchester Road suite need not be produced, that contention must be overruled, particularly as Prestige promised at the April 16 discovery hearing to produce any documents of Ransome's which are in Prestige's possession. *See* **Exhibit C** (April 16, 2026 Hearing Transcript), pp 15:25-16:3.

4. As the property manager for the building, Prestige has access to a trove of documents regarding Plaintiff's Section 8 program directly from the government portal, www.nyc.gov/dtrownerportal. Tenants do not have access to that portal. Therefore, the documents available from the portal are in the possession, custody, and control of Prestige and should be ordered produced.   Prestige dances around the issue of the production of this information discussing the "account name," but the handful of letters from HPD that Prestige produced were in an electronic format apparently downloaded from this portal. **Documents identified but not produced.**

Prestige identifies certain documents in its initial disclosures (emails and electronically stored information in the emails, sent to and from Prestige employee Devon Kelly; and records "related to the management of the property".) **Exhibit D** (Prestige's Initial Disclosures, p. 2). Yet in response to RFP # 14, which requests the documents identified in Prestige's initial disclosures, Prestige promises to produce responsive documents under separate cover—without producing either the identified emails or a privilege log to explain any asserted privilege. **Exhibit E** (Prestige's Document Request Answers); **Exhibit F** (Prestige's Produced Documents). Prestige represents that it is still conducting a search for these electronic communications; Plaintiff requests that the court order a date certain by which such a search will be completed and any responsive documents produced.

The initial disclosures identify the address where certain responsive documents are stored—the same Bronx address Prestige shares with Ransome—but in response to interrogatory # 4 do not identify the "custodian" of the documents. As the address listed does not appear to be associated with Prestige, Prestige should identify the custodians of the documents. To the extent that the documents sought are in the possession of defaulting Defendant Arthur Ransome, as the property management company and registered agent of Arthur Ransome, with the same Bronx address as Arthur Ransome, Prestige has "possession, custody, or control" of these documents. Any documents nominally of Ransome must be in the possession, custody, or control of Prestige. Conversely, if Prestige is a stranger to Ransome, then they cannot argue that the privilege of Ransome, if any, applies to them.

At the April 16 discovery conference, the parties discussed the intake form filled out by Prestige and submitted to Sperber Kahan to initiate each eviction lawsuit, which Attorney Defendants have produced in entirely redacted form. Counsel for Prestige agreed with the

Court's suggestion that a form with the fields unredacted, and only the responses redacted, would be unobjectionable, relevant, and unprotected by privilege in Prestige's view. **Exhibit C** (April 16, 2026 Hearing Transcript), pp. 38:5-39:12. The Court acknowledged Plaintiff's concern that producing a truly blank form would not reveal the actual standard practices of Defendants; production of an unredacted form, or a form which only redacts those fields which are actually filled out so as to account for the Court's concern about lines ordinarily left blank, would provide valuable information. *Id.* pp. 40:20-41:2. To the extent Prestige possesses any intake forms it submitted relating to Ms. Garcia, Plaintiff requests an order compelling their production, either unredacted or with only those fields which were filled out redacted.

Fed. R. Civ. P. 34(b)(2)(C) states that if objections are made, the responding party must also state whether any responsive materials are being withheld on the basis of that objection. Fed. R. Civ. P. 34(b)(2)(C). " [C]ounsel should specifically state whether the responding party is fully answering or responding to a request and, if not, specifically identify the categories of information that have been withheld on an objection-by-objection basis." Joyner v. Presidential Advisory Comm'n on Election Integrity, 2017 U.S. Dist. LEXIS 117319, at *14 (S.D. Fla. July 20, 2017). Furthermore, for those requests where Defendant has answered the request despite making objections, Defendant is required to disclose whether some documents are still being withheld on the objection. *See Fay Ave. Props., LLC v. Travelers Prop. Cas. Co. of Am.,* 2014 U.S. Dist. LEXIS 89614, at *3-4. ("with respect to requests for production of documents, a response 'subject to' and 'without waiving objections,' leaves the requesting party to guess whether the producing party has produced all responsive documents, or only some responsive documents and withheld others on the basis of the objections.") Therefore, Plaintiff requests that Defendant supplement all of its response to Plaintiff's Request for Production by stating whether documents have been withheld on account of any of Defendant's objections. More to the point, Defendant needs to affirmatively state they have performed a diligent search and produced all documents in its possession custody order control. Defendant cannot fail to perform a diligent search and then hide behind an assertion that it is not withholding a document. A response to a Request for Production of Documents which merely promises to produce requested documents at some unidentified time in the future, without offering a specific time, place and manner, is not a complete answer as required by Fed. R. Civ. P.  34(b), and therefore, is treated is a failure to respond pursuant to Fed. R. Civ. P.  37(a)(3). *See Jayne H. Hee, Inc. v. Flagstaff Indus. Corp., 173 FRD 651* (1997). A vague reference to its document production, without specifying which specific documents are responsive, make it impossible for Plaintiff to determine which documents Defendants are producing in response to each request. See Queensridge Towers, LLC v. Allianz Glob. Risks USIns. Co., No. 2:13-cv-197 JCM-PAL, 2014 U.S. Dist. LEXIS 14167, at *15-16 (D. Nev. 2014). Defendants must specify by Bates stamp what documents are allegedly responsive to this request in order to permit Plaintiff to locate and identify them. Id. at *23. Prestige's written responses to Plaintiff's document requests do not identify by Bates number which documents are responsive to which requests. Plaintiff requests an order from this Court compelling full, responsive discovery answers, including Bates-number identifications for each discovery request.

### 5. Depositions

At the April 16, 2026 hearing, Your Honor specifically stated that Plaintiff should seek to obtain certain information through depositions rather than interrogatories, and acknowledged Plaintiff's need for discovery in order to assess whether to amend the complaint to add parties

(and, if so, which parties to add.) *See* **Exhibit C** (April 16, 2026 Hearing Transcript), pp. 44:6-44:9. Plaintiff has asked for deposition dates from Prestige since it propounded its first set of discovery demands, specifically discussed dates certain in a lengthy phone call on April 17, and sent formal deposition notices on April 23 for defendants and Fed.R.Civ.P. 30(b)(1) beginning on May 8. *See* Exhibit G (Plaintiff's Deposition Notices, April 23, 2026). Late on May 7 – the evening before the Prestige Fed. R. Civ. P. 30(b)(6) deposition - Prestige filed a letter for protective order [Dkt. 76] from depositions. Plaintiff will respond to this separately but it appears Plaintiff will need an order for the depositions to be set as noticed on dates certain.

## D. Prestige's Response, and Items for Which Prestige Seeks Court Intervention

As explicitly stipulated to in Item 5 of the Agreements between the Parties above, Prestige has agreed to supplement its discovery responses with any other documents in its possession, custody, and control by May 21, 2026. This is the agreement the parties came to at the meet-and-confer meetings that took place prior to the drafting of this letter. Thus, Plaintiff's request for an order to compel additional documents and information within 7 days contradicts the agreed upon schedule.

### 1. Response to Plaintiff's request regarding interrogatory responses.

Plaintiff's interrogatories numbered 8 though 16 inappropriately seek information outside the scope of Local Civil Rule 33.3 ("Rule 33.3"), which governs interrogatories in the Southern District of New York. Rule 33.3 explicitly states that "interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature."

Rather than seeking the identities of witnesses who may possess the information Plaintiff seeks, Plaintiff's attempt to circumvent Rule 33.3's explicit restriction imposed by directly requesting substantive information but framing the requests as inquiries for individuals or entities. To provide a few examples that illustrate this improper approach, Demand No. 8 requests "each person who has an ownership interest in the Building or who provides accounting, billing, and property management services for the Building", rather than seeking witnesses that have personal knowledge of such ownership interests. Instead of requesting the information of witnesses who would have knowledge of the 2023 and 2024 lawsuits, the 2025 collection letter, the 2025 certification to HPD, and the 2025 billing statements, Demand No. 9 improperly requests the identity of the decisionmakers themselves. Instead of requesting witnesses who have personal knowledge that would be sufficient to ascertain damages or other relevant aspects of Plaintiff's claim, Demand No. 14 improperly asks Prestige to identify any accounting firm that does its accounting.

To the extent that Prestige finds additional responsive information within the scope of Rule 33.3, such information will be provided by the May 21, 2026 deadline. Information outside that scope, however, is not a proper subject of interrogatories under Rule 33.3, and Prestige is under no obligation to provide it at this time.

2. **Response to Plaintiff's argument on objections.**

Prestige stands by its substantive objections in its responses to Plaintiff's document demands and interrogatories. Prestige rejects Plaintiff's characterization of its objections as "boilerplate" and notes that each of its objections are legally valid, particularized responses to Plaintiff's demands, many of which are overly broad and akin to a "fishing information" for collateral discovery of information not relevant to Plaintiff's claims.

At the meet-and-confer discussion held, Prestige made clear that it was not withholding documents on the basis of privilege or other objections. Plaintiff knows that Prestige is in the process of obtaining more information and documents and the parties have explicitly stipulated to provide any responsive materials by May 21, 2026. This will include a redaction log for withheld materials. Relitigating this issue, on which parties have already stipulated, is an unnecessary burden on judicial resources and appears to be an attempt by Plaintiff to fabricate nonexistent issues.

This court does permit objections to requests that are vague, ambiguous, and overbroad where information sought is not relevant to the claims or defenses in the matter. *Pegoraro v. Marrero,* 281 F.R.D. 122 (S.D.N.Y. 2012). This is particularly true when requests are made without limitations of scope and time and "constitute no more than a fishing expedition to discover additional instances of wrongdoing beyond those alleged in the Answer." *Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023 at *2 (S.D.N.Y. 2002) (discovery "is not intended to be a fishing expedition, but rather is meant to allow parties to flesh out allegations for which they initially have at least a modicum of objective support")(internal citations omitted). Furthermore, to the extent that many of the objections are unclear, Prestige asked Plaintiff at the meet-and-confer to clarify the exact documents sought, but Plaintiff refused to do so.

Plaintiff also cites to several courts outside this jurisdictions for rules regarding how Prestige should respond to discovery requests, including Florida, Nevada, California, and Maryland.[3] This is simply not the rule in this Court.  For example, Plaintiff requests an order that Prestige identifies the Bates numbers of documents that are responsive to each request. Prestige is under no obligation to do so. FRCP 34(b)(2)(E)(i) provides a producing party with two options for how to produce and Prestige chose "produce documents as they are kept in the usual course of business." Prestige invited Plaintiff at multiple junctures to provide authority for their demand that Prestige produce their material another way, but Plaintiff has declined to do so, including in this letter. Prestige has also invited Plaintiff to identify specific documents she believes may be missing from Prestige, which Plaintiff also declined.   This is not the case where Prestige's production is so voluminous that it would require such an unusual remedy from the Court.

Demand No. 5 requests "contracts or agreements that govern the collection of the putative debt." Plaintiff cites to *Ghabra v. Palisades Collection, LLC*, 2022 WL 17489969 at *1 (E.D.N.Y. 2022), to stand for the proposition that the term "putative debt" is not itself ambiguous

---

[3] The full cites to a few of Plaintiff's mis-cited cases are: *Fay Ave. Props., LLC v. Travelers Prop. Cas. Co. of Am.*, No. CIV. 11-2389-GPC WVG, 2014 WL 2965316 (S.D. Cal. July 1, 2014); *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651 (D. Md. 1997).

where specifically defined. Notwithstanding the fact that *Ghabara* is not controlling here, this document request is vague, ambiguous, and overbroad beyond the singular term "putative debt", and Prestige has the right to preserve its objections accordingly.

Demand No. 16 requests documents that Prestige "intends to use or introduce at the trial of the case." Given that this case is still in the early stages of discovery, Prestige has yet to identify documents it intends to use at the trial of the case.

Demands No. 20 and 29 request contracts that would govern Attorney Defendants' representation of co-defendant Arthur Ransome Houses LP and Prestige. While Prestige has not yet identified documents in its possession, custody, and control that would be responsive, it is also reasonably anticipated that any such documents would be subject to the attorney-client privilege. Accordingly, Prestige reserves its objection in this regard.

Demand No. 30 asks about documents identifying any party that Prestige has brought non-payment proceedings, not limited by scope or time. This is the exact nature of discovery request that the *Tottenham* court explicitly prohibited as an impermissible "fishing expedition to discover additional instances of wrongdoing beyond those alleged in the Answer." *Tottenham*, 2002 WL 1967023 at *2.

Demand No. 31 requests "[d]ocuments sufficient to identify the persons involved in addressing or remedying the alleged HQS Violations in the Building. This is irrelevant because the alleged HQS Violations are not at issue in this action, and Plaintiff does not allege liability against Prestige for any alleged violation in the present action. It is thus unclear what purpose these documents would serve outside of an impermissible "fishing expedition" for Plaintiffs to find unrelated causes of action to assert against Prestige.

Demand No. 32 requests "[d]ocuments sufficient to identify any accounting firm that does" Prestige's accounting. None of the claims asserted in the Complaint relate to Prestige's accounting in any way, and therefore it is unclear what permissible purpose such documents would serve. Plaintiff was given an opportunity to clarify the relevance of this request at the meet-and-confer but declined to do so.

To the extent that Plaintiff intends to move to compel further responses, Prestige intends to and reserves all rights to oppose these motions.

### 3. <u>Response on documents not in Prestige's possession, custody, or control.</u>

Plaintiff attempts to expand the scope of obligations on document demands to include a requirement to identify anyone, including nonparties, who may potentially have documents Plaintiff seeks in their possession, custody, or control. Prestige truthfully responded that some of the requested documents that have yet to be identified and discovered as in its possession, custody, or control. To the extent that any documents may be in the possession, custody, or control of other parties, Prestige has no obligation to guess which other entities or individuals may have the documents or search for these documents from other third parties. Prestige's discovery obligations pertain solely to documents that are in its possession, custody, and control.

9

Plaintiff has provided no authority indicating otherwise despite multiple invitations to do so by Prestige's counsel. To the extent Prestige's representative has any knowledge on documents that may be in the possession, custody, and control of others, which is denied, Plaintiff may attempt to elicit such testimony in depositions, but Prestige has no obligation to attempt to infer what other entities or persons may have Plaintiff's requested documents.

Notwithstanding that Prestige does not have an account to access documents in the government portal Plaintiff refers to, such documents appear to be in the possession, custody, and control of the HPD's Division of Tenant Resources. Therefore, Plaintiff would have to request these documents through a subpoena to that division rather than from Prestige. Plaintiff's guess as to how Prestige has certain documents it produced is simply that, a guess.

**4. <u>Response to Plaintiff's arguments on other documents not produced.</u>**

Prestige has been very clear at its meet-and-confer meeting with Plaintiff, in its May 7, 2026 letter to the Court (ECF 77), and above that it is conducting an ongoing search for any remaining responsive documents that will be produced on or before May 21, 2026. This was the purpose for the above stipulation. Therefore, it is unclear why Plaintiff includes such stipulation in this submission and yet simultaneously requests to compel these responses before the stipulated deadline. This request thus amounts to an inefficient waste of judicial resources.

Plaintiff's contention that documents in the possession, custody, or control of Prestige must be coextensive with those in the possession, custody, or control of Ransome unless "Prestige is a stranger to Ransome" is facially untenable. It has never been disputed in this litigation that Prestige works as a managing agent for Ransome. As Ransome's agent, any attorney-client privilege held by Ransome would extend to Prestige as Ransome's agent for purposes in which the Attorney Defendants represented Ransome. It is clear that the "attorney-client privilege protects communications between lawyers and agents of a client where such communications are for the purpose of rendering legal advice." *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213 (S.D.N.Y. 2001)(collecting cases). Nonetheless, they are separate entities, and Plaintiff has no grounds to assert that Prestige necessarily has access to all of the documents in Ransome's possession, custody, and control.

The fact that Prestige was listed as an agent for service of process for Ransome and Prestige's address was provided as a service address accords with the fact that Prestige is Ransome's property manager and is not an indication that Ransome and Prestige shared an office. This is not a basis for Plaintiff to assert that Prestige and Ransome share the same office.

**5. <u>Response on depositions and Prestige's request for court intervention.</u>**

As outlined in its May 7, 2026 letter motion (ECF No. 76), an abeyance of all depositions is necessary to avoid the prejudice to Prestige, along with the unnecessary and wasteful expenses for all parties, that would be caused by conducting depositions before Prestige's motion to dismiss is decided and before Prestige files an answer to the complaint and asserts cross- or counter-claims. Furthermore, the finalized Complaint is necessary to proceed with depositions because defendants do not have Plaintiff's finalized allegations. Depositions are also not

appropriate until Plaintiff has responded to Prestige's discovery requests.

In the event that Prestige's motion is denied, Prestige requests that a 30(b)(6) deposition of a representative of Prestige will be held on a date mutually acceptable to all parties, and that the subpoenas that Plaintiff attempted to serve of other employees of Prestige be held in abeyance until after Prestige's 30(b)(6) deposition. After Prestige's 30(b)(6) deposition is complete, we will work to come to an agreement with all other counsel on additional depositions, if any, that Plaintiff is entitled to.

Furthermore, to avoid the necessity of a motion to quash, Prestige respectfully requests that this Court preserves Prestige's right to object to the subpoenas until after Prestige's 30(b)(6) deposition, when the issues that may require further depositions are more narrowly tailored. It is inappropriate and wasteful for Prestige to subpoena the depositions of other witnesses and require Prestige to respond to such subpoenas until the 30(b)(6) deposition is taken to ascertain whether any other potential fact witnesses may have outstanding information that Plaintiff requires. If no abeyance is provided, Prestige will have to move to quash these subpoenas.

On May 4, 2026, before Prestige's counsel was authorized to accept service of subpoenas, Plaintiff's counsel attempted to short serve a subpoena set for May 12, 2026 at 10:30 a.m. of Arlyane McGlashan, who is employed by Prestige but has no direct knowledge of the subject claims or events alleged. Prestige's counsel informed Plaintiff that at the time, their firm was not yet authorized to accept service. Plaintiff then delivered the subpoena to Prestige's office, and the subpoena was received on the evening of May 11, 2026. Although Prestige's counsel is not authorized to accept service of subpoenas, Plaintiff has yet to serve any subpoenas with a reasonable time specified for compliance.

As explained above, even if Plaintiff does properly serve a subpoena that Prestige's counsel is now authorized to accept, any deposition of such a witness is premature until Prestige's 30(b)(6) deposition is completed.

6.  **Plaintiff's initial disclosures are deficient, and Prestige reserves all rights regarding Plaintiff's amended initial disclosures.**

Plaintiff's first initial disclosures are deficient. Plaintiff fails to provide a description of the location of all documents, data compilations, and tangible things that are in the possession, custody or control that Plaintiff identifies and intends to use to support her claims.

At 3:22 p.m. on May 12, 2026, Plaintiff served amended initial disclosures. As these were served very close to the deadline for submission of this letter, Prestige has not had a chance to review and analyze the amended initial disclosures. At first glance, Plaintiff's amended initial disclosures fail to identify where her relevant documents are located. As such, Prestige reserves all rights with respect to Plaintiff's initial disclosures.

11

Respectfully,
/s/
Ahmad Keshavarz

The Court will hold oral argument on the disputes outlined in this letter and Prestige Management, Inc.'s letter motion to stay depositions (Dkt. No. 76) on June 10, 2026 at 10:00 AM in Courtroom 9A, 500 Pearl Street, New York, NY 10007.   In light of Plaintiff's representation that she "needs depositions to assist in amending the complaint," Plaintiff's deadline to submit an amended complaint joining additional parties or asserting additional causes of action, and for Defendants to assert additional defenses, are hereby extended to July 1, 2026 and July 15, 2026, respectively.  All other outstanding deadlines set in the Court's April 17, 2026 Order (Dkt. No. 72) shall remain the same.  SO ORDERED.

Dated: May 26, 2026
       New York, New York

SO ORDERED:

HON. GARY  STEIN
UNITED STATES MAGISTRATE JUDGE

12