# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
LEONARDA GARCIA,

Plaintiff,

-against-

ERIC H. KAHAN,
SPERBER KAHAN LAW GROUP PLLC,
ARTHUR RANSOME HOUSES LP, and
PRESTIGE MANAGEMENT, INC.,

Defendants.
---------------------------------------------------------x

Civil Action No. ____________

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Leonarda Garcia, by her attorneys at The Law Office of Ahmad Keshavarz, brings her complaint against Defendants Sperber Kahan Law Group PLLC, a debt collection law firm, and Eric H. Kahan, Esq., a principal at the firm (collectively "Attorney Defendants") for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq* and New York Judiciary Law § 487; and against Arthur Ransome Houses LP ("Arthur Ransome"), a landlord, and Prestige Management, Inc. ("Prestige"), a property management company (collectively "Landlord Defendants"), as well as the Attorney Defendants for violating GBL § 349 and committing negligence *per se* and gross negligence, and alleges as follows:

## PRELIMINARY STATEMENT[1]

1. Ms. Garcia is a low-income home health aide and a participant in the Section 8 voucher program as administered by the New York City Department of Housing Preservation and Development ("HPD"). She has lived at 151 West 23rd St, Apt. 6-C, New York, New York 10027 for eleven years. Under the Section 8 program, HPD was required to pay a share of the

[1] This summary is for the convenience of Defendants and the Court. The summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

rent (the "government share") and Ms. Garcia is required to pay part of the rent (the "tenant share.") HPD may cease paying its share of the rent if the landlord fails an annual inspection and does not cure. However, under no relevant circumstances is the amount withheld by HPD chargeable to the tenant.

2. Arthur Ransome Houses LP, the landlord, and Prestige Management, Inc. ("Prestige"), its property management company, are required to meet basic Housing Quality Standards ("HQS") to participate in the Section 8 program and receive HPD Section 8 payments. The Landlord Defendants failed their HQS inspection in March 2022, but refused to complete repairs, and consequently HPD ceased paying the government share in May, 2022. Among other defects, the Landlord Defendants did not provide heat to Ms. Garcia in the winter.

3. Rather than making repairs to meet the basic HQS standards, the Landlord Defendants decided to do what the law explicitly prohibited: seek to collect the government portion from Ms. Garcia.

4. The Landlord Defendants retained Eric H. Kahan, Esq. and the various incarnations of his law firm, most recently Sperber Kahan Law Group PLLC (collectively the "Attorney Defendants") to unlawfully collect this rent from Ms. Garcia.[2] The Attorney Defendants sued Ms. Garcia in 2023 for what was admitted to be solely the government share. Fortunately, Ms. Garcia was eventually able to retain a legal services organization to represent her and, after months, was able to able to get the case dismissed. Not to be deterred, the Attorney Defendants sued Ms. Garcia again in 2024—once again solely for the government share of rent.

---

[2] Mr. Kahan's firm changed during the course of the collection activities from SDK Heiberger LLP, to SKH Heiberger LLP, and finally Sperber Kahan Law Group PLLC. This suit is brought against the most recent incarnation of the firm for activities from approximately April 1, 2024 onward, as the prior incarnations of the firm no longer exist. However, for simplicity the Complaint will use the term "Attorney Defendants" to apply to Mr. Kahan and the various incarnations of his firm. Notably, Mr. Kahan personally took most of the acts that form the basis of the liability during for the various incarnations of his firm.

5. Ms. Garcia retained a private attorney and paid him legal fees to defend herself against this second suit, and was once again able to get the suit dismissed—this time with a so-ordered stipulation in which the defendants admitted they had wrongly sought Section 8's share of the rent from Ms. Garcia and promised to update their records to reflect Ms. Garcia's timely payment of her share of the rent. Mere months after signing a stipulation to end the 2024 lawsuit, Defendants began threatening Ms. Garcia with a third lawsuit for the Section 8 share of rent, in flagrant violation of their promise in the stipulation to update their records to reflect Ms. Garcia's correct rent balance.

6. Ms. Garcia now brings this action to hold Defendants accountable for their campaign of baseless harassment and flagrant abuse of the New York City housing courts to attempt to strong-arm her into paying rent she did not owe by Defendants' own admission.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to the FDCPA, 15. U.S.C. § 1692k(d), and under 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they share a common nucleus of operative fact with the federal claim and are so related to the federal claim as to form part of the case or controversy under Article III of the United States Constitution.

9. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within the Southern District of New York.

## PARTIES

10. Plaintiff Ms. Leonarda Garcia is a natural person residing at 151 West 123rd Street, Apartment 6-C, New York, New York 10027.

11. Defendant Arthur Ransome Houses LP ("Ransome Houses") is a domestic limited liability corporation organized under the law of the State of New York and residing in New York County, New York. It is the owner of the building where Ms. Garcia resides, 151 West 123rd St., NY, and was the petitioner on the rental arrears lawsuit filed against Ms. Garcia.

12. Defendant Prestige Management, Inc. ("Prestige") is a domestic limited liability corporation organized under the law of the State of New York with its headquarters and its principal place of business in 1776 Eastchester Road, Suite 210, Bronx, New York 10461.

13. Prestige is and was at all relevant times the property management company responsible for the day-to-day operations of Ransome Houses at the 151 West 123rd Street building, including but not limited to sending rent invoices to tenants like Ms. Garcia. While Ransome Houses is the owner of the property and the plaintiff in the rental arrears suit, on information and belief many of the relevant actions for Ransome Houses are done by Prestige. For example, the two rental arrears lawsuits by Ransome Houses against Ms. Garcia list Arlyane McGlashan as the managing agent. The Prestige website lists Ms. McGlashan as the General Manager at Prestige who "aggressively monitors rent collection and legal cases to ensure our goal of zero tolerance for rent arrears." Exhibit CC (Prestige website, p. 2) The invoices and statements sent to Ms. Garcia have an address of "ARTHUR RANSOME 151W123 c/o Prestige Management Inc." Exhibit X (March 28, 2025 rent billing statement), Exhibit BB (June 20, 2025 rent billing statement). Rent payments for the building can be made on-line at the Prestige website, www.prestigemgt.com. Perhaps most importantly, the So-Ordered Stipulation of Dismissal of the 2024 rental arrears lawsuit—affirmatively admitting *inter alia* that Ms. Garcia

did not owe any amount for which she was sued and pledging to correct the landlord's billing records—was signed directly on behalf of Arthur Ransome by Detra Williams, with the notation "PMI As Agent." Exhibit W (February 6, 2025 So-Ordered Stipulation to Discontinue). On information and belief, PMI stands for Prestige Management, Inc., and Ms. Williams is the account collection manager at Prestige Management, Inc. This shows direct involvement by Prestige in the wrongful rental arrears collection lawsuits.

14. For all of these reasons and others, Ransome Houses and Prestige are jointly and severally liable for the conduct that forms a basis of this complaint. Consequently, they are jointly referred to as the "Landlord Defendants." Defendant Sperber Kahan Law Group PLLC ("Sperber Kahan") is a debt collection law firm organized under the laws of the State of New York. Sperber Kahan engages in business in New York State and this suit arises out of Sperber Kahan's business in New York State.

15. Sperber Kahan was organized under the laws of the state of New York in November 22, 2024. Prior to the formation of Sperber Kahan, Defendant Kahan represented Landlord Defendants in this case through his prior firm, SKH Heiberger LLP, and an earlier firm, SDK Heiberger LLP.

16. Sperber Kahan, like its predecessor firms, SKH Heiberger LLP, SDK Heiberger LLP, and Sperber Denenberg & Kahan, PC, specializes in collecting putative rental arrears by filing hundreds (if not thousands) of rental arrears lawsuits seeking a monetary judgment as well as possession according to NYSCEF, the New York State Courts Electronic Filing system. Sperber Kahan split from its predecessor SKH Heiberger LLP during the pendency of the 2024 Lawsuit.

17. Defendant Eric H. Kahan is an attorney at law duly admitted to practice in the

State of New York with a principal place of business 205 East 42nd Street, New York, NY 10017. Mr. Kahan is a partner of Defendant Sperber Kahan and was a partner of SKH Heiberger LLP and SDK Heiberger LLP.

18. Each year, Mr. Kahan signs hundreds of petitions seeking to collect alleged rental arrear debts from tenants, as well as seeking possession in the same suits according to NYSCEF, the New York State Courts Electronic Filing system.

19. The Attorney Defendants were acting as the agents of the Landlord Defendants in its litigation and other attempts to collect the putative debt. Attorney Defendants were acting within the course and scope of their agency. Attorney Defendants were the freely chosen counsel of the Landlord Defendants. Therefore, the Landlord Defendants are jointly and severally liable for the conduct of the Attorney Defendants.

## STATEMENT OF FACTS

### Ms. Garcia's Rent-Stabilized Tenancy and Section 8 Subsidy

20. Plaintiff Ms. Garcia is a home health aide and mother of three who has lived in her rent-stabilized apartment since 2014. She lives there with two of her children.

21. The building Ms. Garcia lives in is managed by Defendant Prestige. Prestige generates rental invoices to Ms. Garcia each month for rent alleged to be owed.

22. Ms. Garcia has lived in her apartment for eleven years pursuant to an original lease agreement and subsequent renewal lease agreements between her and owner Ransome Houses.

23. Ms. Garcia is a participant in the federal tenant-based Housing Choice Voucher Program ("Section 8") administered by HPD.

24. Under Section 8 program regulations, each year HPD determines the share of the

monthly rent Ms. Garcia must pay based on her income.

25. The difference between Ms. Garcia's share of the rent and the actual legally regulated monthly rent is paid through her Section 8 rent subsidy, which HPD should send directly to Ransome Houses, the landlord, or to Prestige, its property management agent.

26. Ms. Garcia "is not responsible for payment of the portion of the rent to owner covered by the housing assistance payment under the HAP contract between the owner and the PHA" and "[t]he PHA failure to pay the housing assistance payment to the owner is not a violation of the lease between the tenant and the owner." 24 C.F.R. § 982.310(b)(1)-(2); *see also Prospect Place HDFC v. Gaildon*, 6 Misc. 3d 135(A) (App. Term 1st Dep't 2005) ("A Section 8 tenant agrees in the Section 8 lease only to pay the tenant share of the rent." (citation and internal quotation marks omitted)); *Soumas v. Gregg*, 57 Misc. 3d 135(A) (App. Term. 1st Dep't 2017) ("Here, no new lease agreement was entered into by the parties obligating the tenant to pay the full contract rent. Thus, a nonpayment proceeding does not lie to recover the Section 8 portion of the rent from the tenant."); *New Hempstead Terrace LLC v. Reeves*, 18 Misc. 3d 1113(A) (Dist. Ct. Nassau Cty. 2008) ("This Court holds that petitioner cannot maintain a summary proceeding against respondent to recover in the first instance, absent a good faith allegation that a new agreement has been reached to make the tenant liable for the Section 8 rent.").

27. As owner of the 151 West 123rd Street building, Ransome Houses is party to a Housing Assistance Payment contract ("HAP contract") with HPD, in which it agreed to comply with Section 8 program regulations in order to receive Section 8 subsidy payments.

28. Under the terms of the HAP contract, the landlord must maintain the apartment in compliance with certain Housing Quality Standards ("HQS").

29. If the apartment fails to pass an annual HQS inspection, HPD may suspend the

Section 8 subsidy until the landlord has remedied the failures, and the apartment passes inspection.

30. The HAP contract tenancy addendum provides that the tenant is not liable for payment of the Section 8 subsidy portion of the rent, and that the owner may not terminate the tenancy for nonpayment of the Section 8 subsidy portion of the rent.

31. Further, New York appellate courts have held that a landlord cannot maintain a nonpayment proceeding against a tenant for arrears caused by the suspension of the Section 8 subsidy, regardless of the cause for suspension.

32. Ms. Garcia has used her Section 8 voucher in her current apartment throughout her eleven-year tenancy.

33. Ms. Garcia's monthly rental share established by HPD was $334.00 through and including April 30, 2024, and her current share is $390.00 per month, effective May 1, 2024. Exhibit A (September 12, 2024 HPD email), Exhibit B (March 3, 2024 Rent Breakdown Letter).

34. Prestige, in the course and scope of being agent for Ransome Houses, has charged Ms. Garcia more than her monthly share from at least January 2023 through February 2024, overcharging her by up to $91.20 per month in excess of the HPD-approved rent.

35. Because of the consistently erroneous overcharges on the rent statements Prestige sent to Ms. Garcia, Ms. Garcia overpaid Ransome Houses $64.62 per month from May 2023 through December 2023, and $91.20 per month in January and February of 2024, overpaying Ransome Houses a total of $699.36 from May 2023 through February 2024. Exhibit C (Rental Payment History).

36. As will be seen below, among the many ways the Attorney Defendants sought to collect rent from Ms. Garcia, none of which was chargeable to her, they also sought to collect

amounts that were based on this inflated monthly rent.

37. HPD suspended Section 8 payment of Ms. Garcia's subsidy for the months May 2022 through February 2024, due to HQS violations for conditions Prestige and Ransome Houses had failed to repair. Exhibit A (September 2024 email chain with HPD, p. 4), Exhibit D (May 20, 2022 HQS Abatement Notice).

**The 2023 Lawsuit for Rent Not Owed**

38. In April 2023, Defendants initiated an eviction suit against Ms. Garcia, serving her with a 14-day notice prior to preparing a complaint with the 14-day notice attached on April 25, 2023. Exhibit E (original 2023 complaint with exhibits).

39. In the complaint and rent demand, Ransome Houses (falsely) claimed entitlement to $5,112.72, but did not break out the Section 8 share and the tenant share of the months of rent sought, instead claiming rental arrears of $966.70 without explanation or clarification for the months November 2022 through March 2023 and an additional balance of $279.22 for October 2022. *Id.*

40. The complaint and rent demand failed to credit Ms. Garcia for the following payments: $398.62 on October 1, 2022; $398.62 on October 30, 2022; $398.62 on December 3, 2022; $398.62 on December 30, 2022; $398.62 on January 29, 2023; and $398.62 on February 27, 2023.

41. The rent ledger included entries for HPD's Section 8 share of the rent. The rent ledger also reflected a total monthly rent in excess of the approved total monthly rent Ransome Houses was authorized by the City to charge. Ms. Garcia was shocked and terrified about the lawsuit seeking a judgment for rent, none of which was owed by her, as well as seeking to evict her and her family from their home of eleven years. In fact, for years Ms. Garcia had consistently

been paying the entirety of her share of the rent and was bewildered the Defendants were claiming she owed the full rent balance.

42. The 2023 complaint sought the HPD Section 8 share of Ms. Garcia's rent. At this time, *HPD* had stopped paying *its* portion of Ms. Garcia's rent due to unremedied HQS violations. Exhibit A (September 2024 email chain with HPD, p. 4), Exhibit D (2022 HQS abatement notice).

43. The Landlord Defendants knew that it was HPD (not Ms. Garcia) that had ceased paying its share of the rent for their failure to pass the HQS inspection if for no other reason than the notice of failure to pass the HQS inspection was served by HPD on the Landlord Defendants.

44. On May 1, 2023, the Landlord Defendants, through Mr. Kahan and his then-firm SDK Heiberger LLP, commenced a non-payment of rent proceeding against Ms. Garcia in New York County Housing Court, captioned *Arthur Ransome Houses, L.P. against Leonarda Garcia*, Index Number LT-308781-23/NY (the "2023 Lawsuit"). Exhibit E.

45. The verified petition alleged rental arrears amounting to $5,112.72 and attached to it as exhibits the Fourteen-Day Rent Demand and an Affidavit of Service. *Id.*

46. Notably, the petition failed to plead that Ms. Garcia is an HPD Section 8 voucher holder, and the affidavit of service fails to show that HPD was served with copies of the pleadings as required by federal law when the respondent is a Section 8 voucher holder, and, on information and belief, Defendants in fact never did so. *Id.*

47. The failure of the Attorney Defendants to provide these notices makes it materially more difficult to challenge a collection lawsuit. The disclosure on the complaint of the receipt of section 8 allows the court to scrutinize the rental ledger more closely with an eye towards seeing whether the suit is in fact seeking a section 8 portion of the rent. The requirement

to provide this notice is so material that the failure to do so subjects the complaint to dismissal. *See, e.g. Park Properties Associates, L.P. v. Williams*, 38 Misc. 3d 35 (App. Term, 9th & 10th Jud. Dists. 2012) (reversing order denying tenant's motion to vacate judgment because petition failed to allege tenant was receiving Section 8 rent subsidies). The failure to provide pre-suit disclosure to HPD strips the tenant of an additional mechanism to challenge whether the amount sought is correct.

48. Defendant Eric H. Kahan, Esq. signed the complaint, affirming under penalty of perjury “that he has read the foregoing petition and knows the contents thereof; that the same are true to his own knowledge except as to matters stated to be upon information and belief; and as to those matters he believes them to be true.” *Id.*

49. Defendant Eric H. Kahan, Esq. knew, or through the exercise of a meaningful attorney review, should have known, there was no lawful basis to sue Ms. Garcia for rent or for possession because, *inter alia*, he was suing solely for the government share of the rent.

50. On May 12, 2023, after receiving notice of the 2023 Lawsuit via mail, Ms. Garcia had to spend time to go to the courthouse to file a *pro se* answer asserting that the rent had already been paid. Exhibit F (May 12, 2023 initial answer). She was assigned a May 22 court date.

51. On May 22, 2023, Ms. Garcia appeared before the court *pro se* and nervously waited in the court room for her name to be called. At the May 22, 2023 court date, Ms. Garcia was referred to the Legal Aid Society.

52. Ms. Garcia retained the Legal Aid Society for the purpose of defending against the 2023 Lawsuit, and an attorney from the Legal Aid Society entered her Notice of Appearance on June 20, 2023. Exhibit G (June 20, 2023 Notice of Appearance.)

Case 1:25-cv-08489-JGK-GS Document 109-1 Filed 01/14/26 Page 13 of 29

53. On July 13, 2023, the Legal Aid Society filed a motion for leave to amend the answer on Ms. Garcia's behalf, along with a supporting affirmation and a proposed amended answer asserting a number of defenses and counterclaims, including eleven specifically enumerated HQS violations. Exhibit H (Motion and Attorney Affirmation), Exhibit I (Garcia Affirmation), Exhibit J (Proposed Amended Answer).

54. On July 17, 2023, the parties stipulated to adjourn the proceedings until August 31, 2023 to allow the parties to engage in motion practice. Exhibit K (July 17, 2023 Stipulation).

55. On August 2, 2023, Ms. Garcia's counsel at the Legal Aid Society requested and obtained a subpoena compelling Defendants to produce records relating to Ms. Garcia's tenancy, payment history, and Section 8 voucher. Exhibit L (August 2, 2023 Subpoena Request).

56. A series of subsequent stipulations demonstrate that Defendants knew that HPD had ceased making its share of the rent payments for the failure of the landlord to cure HPD violations. Defendants continued with the suit seeking rent from Ms. Garcia that they knew was not chargeable to her.

57. Most clearly, the September 26, 2023 Stipulation indicated that it was HPD share of the rent that was withheld based on the landlord failing inspections and failing to make repairs (as opposed to Ms. Garcia failing to make her share of the Section 8 rent). Exhibit M ("HPD appeared in court on September 26, 2023 with court file and Rent Breakdown letter indicating that the contested rent is $908 per month and that HPD Section 8 ceased payment due to a failed HQS inspection.") Subsequent so-ordered stipulations adjourning future hearings indicated that the landlord continued to fail to cure the failed inspections, including to failure to provide heat in the winter, specifically during December 2023. Exhibit N (December 6, 2023 so-ordered stipulation) (adjourned for landlord "to complete repairs and cure the subject premises' HPD

Case 1:25-cv-08489-JGK-GS Document 9-1 Filed 10/14/25 Page 13 of 28

violations… [including] lack of heat as required by law"), Exhibit O (February 2, 2024 stipulation) (adjourning hearing for landlord to comply with December 6, 2023 so-ordered stipulation to cure HPD violations).

58. It was only on April 1, 2024 – more than five months after filing and maintaining a frivolous lawsuit against Ms. Garcia – that the landlord finally stipulated to dismiss the suit. The landlord tacitly admitted that it sued Ms. Garcia for rent, none of which was chargeable to her. The stipulation stated the "petition is hereby satisfied" and that "Section 8 appeared and confirmed that they have resumed payments." Exhibit P (April 1, 2024 stipulation). The firm that signed the stipulation for the landlord was now ***SKH*** Heiberger LLP, a successor to the firm that filed the complaint, ***SDK*** Heiberger LLP.

**The 2024 Lawsuit for Rent Not Owed**

59. On November 1, 2024, seven months to the day after the signing of the stipulation of discontinuance in the 2023 Lawsuit, Defendant Kahan, through purchased the index number LT-319223-24/NY and filed a complaint against Ms. Garcia on behalf of Landlord Defendants. Exhibit Q (November 1, 2024 complaint.)

60. Notably, the law firm that signed the April 1, 2024 stipulation in the 2023 lawsuit that the "Petition has been satisfied," is the same as filed the 2024 lawsuit, SKH Heiberger LLP.

61. The 2024 lawsuit (falsely) represented that Ms. Garcia owed rent of $11,712.91, sought a judgment based on that amount, and sought to evict Ms. Garcia and her family from their home of eleven years.

62. Like the 2023 Lawsuit, the complaint in the 2024 Lawsuit is signed by Defendant Kahan. *Id.*

63. Like the 2023 Lawsuit, the complaint in the 2024 Lawsuit seeks back rent from

the period of time wherein HPD was not paying the Section 8 share due to the landlord's HQS violations. Exhibit A (September 2024 email chain with HPD, p. 4), Exhibit P (April 1, 2024 Stipulation of Discontinuance), Exhibit Q (November 1, 2024 Complaint).

64. Like the 2023 Lawsuit, the complaint in the 2024 Lawsuit seeks a total monthly rent in excess of that approved by HPD. Exhibit A (September 2024 email chain with HPD, pp. 1-4), Exhibit P (April 1, 2024 Stipulation of Discontinuance), Exhibit Q (November 1, 2024 Complaint).

65. Like the 2023 Lawsuit, the complaint in the 2024 Lawsuit fails to plead that Ms. Garcia is a Section 8 voucher holder.

66. Like the 2023 Lawsuit, the complaint in the 2024 Lawsuit seeks back rent including the Section 8 share of Ms. Garcia's rent from the period of more than two years during which HPD was not paying the Section 8 share of Ms. Garcia's rent due to Landlord Defendants' HQS violations.

67. Unlike the 2023 Lawsuit, the affidavit of service in the 2024 Lawsuit indicates that notice was mailed to HPD. Exhibit R (November 8, 2024 Affidavit of Service). The affidavit states that the notice was served on HPD on September 20, several weeks before the suit was filed on November 1. *Id.*.

68. Unlike the 2023 Lawsuit, the 2024 Lawsuit attached a detailed rent ledger. Exhibit S (September 10, 2024 Rent Ledger). The Ledger claimed that Ms. Garcia owed $11,712.91 for rent from July 1, 2022 to September 1, 2024.

69. The 2024 rent ledger clearly demonstrates that Defendants sought rent from Ms. Garcia in excess of her tenant share of the rent. The 2024 rent ledger covers the period from July 2022 to September 2024, and shows a resumption of Section 8 payments by HPD in March 2024.

*Id.* at 3. The ledger holds Ms. Garcia responsible for the full amount of the contract rent each month—including in the months where HPD was withholding Section 8 payments. .

70. The 2024 rent ledger states that the rent alleged to be due is for a time period extending through May of 2024, but the listed amount of $11,712.91 in the ledger and petition reflects the ledger's alleged balance in September 2024, when the ledger appears to have been prepared. *Id.*

71. The 2024 rent ledger clearly shows that Ms. Garcia's consistent monthly payments continued during the period where HPD had suspended payment of the Section 8 share of Ms. Garcia's rent. *Id.* at 2-4. The history and amount of payments made by Ms. Garcia reflected on the rent ledger matches Ms. Garcia's own records of her rental payment history—in which she has always paid her full share of the rent on time. Exhibits C (payment history), S (2024 rent ledger).

72. Combined with Exhibit B, the Rent Breakdown Letter, the 2024 rent ledger clearly shows Ms. Garcia paid *more* than the tenant share of her rent as defined by HPD and the HAP contract. Exhibits B, S.

73. Ms. Garcia appeared *pro se* on December 10, 2024 and filed an answer asserting several defenses, including that the rent had already been paid, that she had not been properly served with a rent demand as required by law, and that the Landlord Defendants had not made the required repairs. Exhibit T (December 10, 2024 *Pro Se* Answer).

74. Ms. Garcia retained a private attorney, James Fishman of Fishman Law Group PLLC, to defend her from the frivolous lawsuit, and paid him attorney's fees for doing so.

75. On December 15, 2024 Mr. Fishman filed a notice of appearance and verified amended answer. Exhibit U (December 15, 2024 Notice of Appearance and Amended Answer).

Case 1:25-cv-08489-JGK-GS Document 1 Filed 10/14/25 Page 16 of 28

The amended answer raised an affirmative defense that the landlord was suing Ms. Garcia for the HPD portion of the rent which is not chargeable to a Section 8 recipient. *Id.* at ¶¶ 22-26. The amended answer also noted that HPD had ceased making payments because the landlord had failed the HQS inspection and had not cured. *Id.*

76. At the December 17, 2024 court appearance, Ms. Garcia, through her counsel, and Defendants stipulated to adjourn the proceedings for all purposes until February 6, 2025. Exhibit V (December 17, 2024 Stipulation of Adjournment).

77. Before this February 6, 2025 court date, the parties stipulated to the discontinuation with prejudice of Defendants' lawsuit against Ms. Garcia, and the stipulation was so-ordered on February 6, 2025. Exhibit W (February 6, 2025 So-Ordered Stipulation of Discontinuance With Prejudice). This stipulation was signed by Defendant Kahan on behalf of his new firm: Defendant Sperber Kahan.

78. In the February 6, 2025 So-Ordered Stipulation (Exhibit W, ¶¶ 1-3), Defendants admitted the following:

a. That the 2024 Lawsuit unlawfully sought the Section 8 share of Ms. Garcia's rent;
b. That Ms. Garcia has no obligation to pay the Section 8 share of her rent;
c. That Ms. Garcia had paid her share of the rent at the time of the initiation of the 2024 Lawsuit; and
d. That Ms. Garcia had continued to pay her share of the rent after the filing of the 2024 Lawsuit, up to the date of the stipulation.

79. In the stipulation (Exhibit W ¶ 4), Defendants also represented—evidently falsely—that they had updated and corrected their records to reflect that Ms. Garcia did not and does not owe the Section 8 share of her rent.

80. Importantly, the stipulation was signed by Eric Kahan on behalf of the latest incarnation of his firm, Sperber Kahan Law Group, LLC, now a defendant in the instant action. Further, the So-Ordered Stipulation was signed directly on behalf of Arthur Ransome Houses,

Case 1:25-cv-08489-JGK-GS Document 1 Filed 10/14/25 Page 17 of 28

LP by Detra Williams, with the notation "PMI As Agent." On information and belief, PMI stands for Prestige Management, Inc., the property management company for the property. On information and belief, Ms. Williams is the account collection manager at Prestige Management, Inc.

***The 2025 Lawsuit Threat and Continued Harassment About the False Rental Arrears***

81. Despite stipulating that they had corrected their records to reflect that Ms. Garcia did not and does not owe the Section 8 share of her rent, Landlord Defendants continued to claim a right to collect the Section 8 share from Ms. Garcia, sending her a billing statement reflecting a balance of $12,478.43, including many months of Section 8's share on March 28, 2025. Exhibit X (March 28, 2025 Billing Statement).

82. Shortly thereafter, Attorney Defendants sent a letter to Ms. Garcia notifying her of their intent to pursue a third unlawful eviction proceeding for the same alleged balance including many months of the Section 8 share of her rent. Exhibit Y (April 8, 2025 Collection Letter).

83. On May 2, 2025, Attorney Defendants, on behalf of Landlord Defendants, sent a pre-suit certification to HPD, notifying them of their intent to pursue a nonpayment eviction proceeding against Ms. Garcia. Exhibit Z (May 2, 2025 Certification to HPD).

84. Crucially, the May 2 Certification to HPD includes a field which can be filled out to indicate the petitioner, in this case Defendants, also intends to seek the Section 8 share of the rent—from HPD, which is ordinarily liable for the Section 8 share, not Ms. Garcia, who as the voucher holder is not liable for the Section 8 share. Defendants did not fill out this section or otherwise indicate any intent to seek Section 8 from HPD. *Id.*

85. On or about May 16, 2025 Ms. Garcia sent a letter to Defendants summarizing the case and putting Defendants on notice as to Defendants' own admissions in prior cases: that Ms.

Garcia did not owe the Section 8 share of her rent and that Defendants had unlawfully sought to collect the Section 8 share of Ms. Garcia's rent from her. Exhibit AA (May 16, 2025 Letter to Defendants).

86. This letter also requested written confirmation that Ms. Garcia owes no rent and Defendants will not seek to evict her on that basis—in essence, simply requesting that Defendants confirm in writing their commitment to honoring the terms of their prior stipulations. *Id.*

87. Ms. Garcia's letter did not produce any change in Defendants' behavior. On June 20, 2025, Landlord Defendants issued to Ms. Garcia another rent statement claiming she owed the remarkable sum of $13,237.37, once again claiming an increase to the same large balance of Section 8 back rent—a balance which plainly includes the very rental arrears Defendants had previously stipulated Ms. Garcia did not and does not owe. Exhibit BB (June 20, 2025 Rent Statement).

88. All parties, attorneys, and law firms involved in the February 6, 2025 So-Ordered Stipulation of Discontinuation with Prejudice are also involved in the ongoing efforts to collect yet again from Ms. Garcia.

89. Additionally, in communications with Prestige, which manages the building and serves as Ms. Garcia's point of contact for requesting and coordinating the still-uncompleted repairs, Prestige employees continue to reference Ms. Garcia's falsely alleged rental arrears, even after being informed of the prior lawsuits and stipulations of discontinuance.

***Defendants' Illegal, Baseless Lawsuits Caused Ms. Garcia to Experience Emotional Distress and to Incur Significant Expenses***

90. As a low-income working mother and Section 8 participant, Ms. Garcia is precisely the type of vulnerable consumer the FDCPA was designed to protect.

91. Her life has been severely affected by Defendants' actions. Defendants' conduct caused Ms. Garcia to sustain actual damages, including legal fees, forgone wages because of missing work, and transportation costs for travel back and forth to New York County Housing Court and to meetings and consultations with her attorneys.

92. The prospect of eviction was especially worrying to Ms. Garcia because she has previously been evicted, along with her children (though not for nonpayment; Ms. Garcia resided in what she did not realize was an illegal sublet prior to moving into the Ransome Houses property.) The traumatic experience of eviction was not and is not one Ms. Garcia wants to relive—hence her participation in Section 8 and her timely payment of her share of each month's rent.

93. Moreover, the mental and physical anguish and stress Ms. Garcia has experienced as a result of the various Housing Court cases—including the 2025 action apparently being prepared by Defendants right now—has plagued her for more than two years.

94. The 2023 Lawsuit made Ms. Garcia feel afraid and powerless, and caused her to lose sleep throughout the duration of the litigation. Once the lawsuit was resolved, the stress was lifted and Ms. Garcia resumed sleeping normally.

95. After the ordeal of the 2023 Lawsuit, in which Defendants similarly sought to collect the Section 8 share from Ms. Garcia in an eviction proceeding, Ms. Garcia was distraught and afraid when she learned of the 2024 Lawsuit. How could this be happening again, and so soon after the resolution of the prior lawsuit?

96. When she learned of the 2024 Lawsuit, all Ms. Garcia's hopes vanished, and she cried from the stress and despair.

97. Ms. Garcia felt very vulnerable, and became irritated and dejected. She began to

lose sleep again due to the 2024 Lawsuit, and has continued to lose sleep since as Defendants continue their campaign of harassing and unlawful debt collection against her.

98. Ms. Garcia's reprieve from debt collection harassment in between the conclusion of the 2024 Lawsuit and the beginning of Defendants' 2025 harassment and threats lasted for less than two months.

99. Defendants' persistent harassment of Ms. Garcia have made her feel unsafe and insecure in her own home, and made her fear for herself and her children.

100. In each instance—in the 2023 Lawsuit, the 2024 Lawsuit, and in the case of this year's harassment and pre-litigation communications—Ms. Garcia was scared, shocked, and upset by the allegation that she owed many thousands of dollars in rent, because she generally pays her bills, including her rent, on time and in full.

101. Ms. Garcia was additionally upset because the repairs which Defendants had promised to do in the various stipulations were never completed. These repairs are still partially incomplete.

102. As Defendants continue to harass Ms. Garcia and baselessly threaten her with eviction, going so far as threatening to sue *a third time* for the very Section 8 back rent which Defendants stipulated Ms. Garcia did not owe at the conclusion of the 2024 Lawsuit *and* the earlier 2023 Lawsuit, Ms. Garcia's emotional distress and legal expenses are ongoing.

103. Ms. Garcia paid thousands of dollars in attorney's fees flowing from the defense of the 2024 Lawsuit—fees Ms. Garcia would not have incurred but for Defendants' baseless and unlawful 2024 Lawsuit.

104. Ms. Garcia has continued to pay her tenant share of the rent in full throughout this ordeal.

## <u>FIRST CLAIM</u>

**Violations of Fair Debt Collection Practices Act, 15 U.S.C. § 1692 <u>et.seq</u>.**
**(Against Attorney Defendants)**

105. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

106. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e); *see also Hamilton v. United Healthcare of La., Inc.* 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

107. Congress designed the FDCPA to be enforced primarily through private parties, such as Plaintiff, acting as "private attorneys general." <u>See</u> S. Rep. No. 382, 95th Con,. 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance . . . ."); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated Counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

108. The obligation alleged to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the rental arrears were incurred for a residential apartment.

109. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt" as defined by 15 U.S.C. § 1692a(5).

110. For the reasons set forth in the "Parties" section of this Complaint, the Attorney Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6).

111. The Attorney Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; falsely representing or implying that a communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

112. As a direct and proximate result of the Attorney Defendants' violations, Plaintiff has suffered damages, including, *inter alia*, significant emotional distress, embarrassment, humiliation, legal fees, forgone wages because of missing work, and associated transportation costs, for travel back and forth to New York County Housing Court.

113. The injuries inflicted on Plaintiff by the Attorney Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

114. Plaintiff suffered economic injuries that historically has provided a basis for

lawsuits in American courts, including but not limited to foregone wages and costs of transportation to court.

115. Plaintiff's injuries are analogous to, *inter alia*, the following common law claims: wrongful litigation, negligence, invasion of privacy, defamation, intrusion upon seclusion, and abuse of process.

**<u>SECOND CLAIM</u>**

**Violation of GBL § 349**
**(Against All Defendants)**

116. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

117. New York General Business Law § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state." An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. § 349(h).

118. As enumerated above, Defendants violated N.Y. Gen. Bus. § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses. These acts were done by Defendants systematically and, as such, have had a broad impact on consumers at large.

119. Defendants committed the above described acts willfully and/or knowingly.

120. Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

121. As a direct and proximate result of those violations of N.Y. Gen. Bus. § 349 *et seq.*, Plaintiff has suffered compensable harm and is entitled to preliminary and permanent

Case 1:25-cv-08489-JGK-GS Document 109-1 Filed 10/14/25 Page 24 of 28

injunctive relief, and to recover actual, treble, exemplary, and damages, together with costs and attorney's fees

122. The Defendants' deceptive conduct towards Plaintiff is the type of conduct that has a broad impact on consumers at large.

123. That the relevant steps may be taken in a matter of minutes shows a high degree of moral culpability. Defendants' violations were willful and knowing, or, at minimum, evidence a conscious and reckless disregard for basic fairness and for the law. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

124. As a direct and proximate result of Defendants' violations, Plaintiff has suffered damages, including, *inter alia*, legal fees, significant emotional distress, embarrassment, and humiliation.

125. The injuries inflicted on Plaintiff by Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

126. Plaintiff suffered economic injuries that historically have provided a basis for lawsuits in American courts, including but not limited to out of pocket expenses for printing and for postage.

127. Plaintiff's injuries are analogous to, *inter alia*, the following common law claims: wrongful litigation, negligence, invasion of privacy, defamation, intrusion upon seclusion, and abuse of process.

128. Defendants had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that a debt is not linked to the wrong party, and in furnishing agents with accurate information when those

agents rely on and use that information in attempting to collect debts.

## THIRD CLAIM

### Violation of New York Judiciary Law § 487
### (Against Attorney Defendants)

129. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

130. New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

131. Judiciary Law § 487 is a traditional cause of action in American courts - N.Y. Judiciary Law § 487 is "the modern-day counterpart of a statute dating from the first decades after Magna Carta; its language virtually (and remarkably) unchanged from that of a law adopted by New York's Legislature two years before the United States Constitution was ratified." *Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 14 (2009).

132. Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487, and Plaintiff so seeks.

## FOURTH CLAIM

### Negligence *Per Se* and Gross Negligence
### (Against All Defendants)

133. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

134. Defendants' failure to exercise even slight care or diligence amounts to gross

Case 1:25-cv-08489-JGK-GS Document 10-1 Filed 10/14/25 Page 26 of 28

negligence.

135. Moreover, had Defendants exercised even slight diligence they would have known their conduct was unlawful.

136. Defendants' actions evince a reckless disregard for the rights of Plaintiff and others. The actions have the appearance of intentional wrongdoing. Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general.

137. Defendants' conduct demonstrates a high degree of moral culpability and willful or wanton negligence or recklessness. As a result, Plaintiff is entitled to a punitive damage award.

138. Defendants owed Ms. Garcia a duty pursuant to the FDCPA, which is designed to protect consumers in part by prohibiting debt collectors from using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; using false, deceptive or misleading representations or means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

139. Creditors and debt collectors in general owe debtors a duty of reasonable care in collecting their debts. *Hawkins-El v. First American Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd* 529 F. Appx. 45 (2d Cir. 2013).

140. GBL § 349 also imposes on Defendants a duty to not engage in deceptive acts and unlawful practices in the conduct of their business.

141. Defendants breached these duties.

142. As a direct and proximate result of Defendants' breach of these duties, Ms. Garcia

Case 1:25-cv-08489-JGK-GS Document 101-1 Filed 01/14/26 Page 27 of 28

suffered compensable harm, including actual damages and emotional distress.

143. Defendants' conduct was so flagrant as to transcend mere carelessness and constitute willful negligence or recklessness. Upon information and belief, Defendants have engaged in a pattern and practice of similar behavior against other tenants. As a result, Ms. Garcia is entitled to actual and punitive damages.

144. To the degree that negligence, negligence *per se*, and gross negligence claims are inconsistent with intentional misconduct, those allegations are made in the alternative.

**DEMAND FOR JURY TRIAL**

145. In accordance with Fed. R. Civ. P. 38(b), Ms. Garcia demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court:

(a) Assume jurisdiction of this action;

(b) Declare that Defendants Sperber Kahan Law Group PLLC and Eric H. Kahan violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq* and New York General Business Law § 349;

(c) Declare that Defendants Sperber Kahan Law Group PLLC and Eric H. Kahan violated New York Judiciary Law § 487;

(d) Declare that all Defendants violated New York General Business Law § 349;

(e) Enjoin Defendants from committing similar deceptive practices in the future;

(f) Award plaintiff actual damages;

(g) Award plaintiff statutory damages pursuant to 15 U.S.C. § 1692k(a) and GBL §§ 349(c) and 349(h);

(h) Award plaintiff treble damages under NY Judiciary Law § 487 and treble damages up to $1,000 under New York General Business Law § 349;

(i) Award plaintiff exemplary and punitive damages;

(j) Award plaintiff costs and attorneys' fees;

(k) Award plaintiff such other and further relief as may be just and proper.

Dated: October 14, 2025

*/s/ Ahmad Keshavarz*

__________________

Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241
Tel: (347) 308-4859
Fax: (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com