# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **LEONARDA GARCIA,**<br>**Plaintiff**<br><br>**v.**<br><br>**SPERBER KAHAN LAW GROUP PLLC, ERIC H. KAHAN, ARTHUR RANSOME HOUSES L.P., and PRESTIGE MANAGEMENT, INC.,**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No.:** 1:25-cv-08489-JGK |

**PLAINTIFF'S NOTICE OF SUBPOENA TO ABYSSINIAN DEVELOPMENT CORPORATION**

To: All Defendants, by and through their counsel as indicated in the certificate of service below. Enclosed please find the subpoena issued on this day to Abyssinian Development Corporation.

Respectfully submitted,
/s/
Ahmad Keshavarz
THE LAW OFFICES OF AHMAD KESHAVARZ
16 Court Street, Suite 2600
Brooklyn, NY 11241
Phone: (347) 308-4859
Fax: (877) 496-7809 (toll-free)
Email: ahmad@newyorkconsumerattorney.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I served the above referenced document to the parties listed below via email to:

***Attorneys for Defendants Sperber Kahan Law Group PLLC and Eric H. Kahan, Esq.***
Adam Marshall
Brett Scher
Kaufman Dolowich LLP
135 Crossways Park Dr, Suite 201

Woodbury, NY 11797
amarshall@kaufmandolowich.com
bscher@kdvlaw.com

Date: August 27, 2026
Brooklyn, NY
/s/
Ahmad Keshavarz
*Counsel for Plaintiff*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | | |
|---|---|---|
| Leonarda Garcia<br>*Plaintiff*<br>v.<br>Eric H. Kahan et al.<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:25-cv-08489-JGK |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Abyssinian Development Corporation
2283 Adam Clayton Powell Jr. Boulevard, New York, NY 10030

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached

| Place: The Law Office of Ahmad Keshavarz, 16 Court Street, 26th Floor, Brooklyn, NY 11241 | Date and Time: 09/11/2026 12:00 pm |
|---|---|

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/27/2026

*CLERK OF COURT*

OR /s/

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Leonarda Garcia, who issues or requests this subpoena, are:

Ahmad Keshavarz, 16 Court Street, 26 Fl, Brooklyn, NY 11241 ahmad@newyorkconsumerattorney.com (347) 308-4859

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 1:25-cv-08489-JGK

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________

on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________________

______________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________

______________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

Plaintiff incorporates by reference the uniform discovery definitions of Local Rule 26.3. In addition to the uniform discovery definitions of Local Rule 26.3, following terms shall have the following meanings:

1. "**Plaintiff**" means the Plaintiff in this federal lawsuit, Leonarda Garcia.
2. "**Answering Defendants**" means the defendants who have appeared in this federal lawsuit: Sperber Kahan Law Group PLLC, Eric H. Kahan, and Prestige Management, Inc.
3. "**Landlord Defendants**" means Prestige Management, Inc., and **"Ransome Houses"**
4. **"Ranson Houses"** specifically including Arthur Ransome Houses L.P., Arthur Ransome Houses Corporation, and National Equity Fund).
5. "**Attorney Defendants**" means Sperber Kahan Law Group PLLC and Eric H. Kahan.
6. "**Building**" means the property bearing the address 151 West 123rd Street, New York, New York 10027.
7. "**You**" or "**Your**" means Abyssinian Development Corporation, their successors, predecessors, divisions, subsidiaries, present and former officers, agents, employees, and all other persons acting on behalf of the responding party or its successors, predecessors, divisions, and subsidiaries.
8. "**Possession, custody, or control**" of an item means that the person either has physical possession of the item or has a right to possession that is equal or superior to the person who has physical possession of the item.[1]
9. The term "**person**" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.
10. The term "**2025 Putative Debt**" means the putative debt alleged in the documents attached as **Exhibit Y** and **Exhibit Z** to the Original Complaint in this action.
11. The term "**2024 Putative Debt**" means the putative debt alleged in the state court case captioned *Arthur Ransome Houses L.P. against Leonarda Garcia,* LT-319223-24/NY in New

[1] Please note that "the clear rule is that documents in the possession of a party's current or former counsel are deemed to be within that party's 'possession, custody and control.'" *MTB Bank v. Federal Armored Express*, 93 Civ. 5594 (LBS), 1998 WL 43125 at * 4 (S.D.N.Y. Feb. 2, 1998) ("Under Fed.R.Civ.P. 34, which governs the production of documents during discovery, the clear rule is that documents in the possession of a party's current or former counsel are deemed to be within that party's 'possession, custody and control.'"). *See also Polanco v. NCO Portfolio Management, Inc.*, 2013 WL 3733391at * 2 (S.D.N.Y. July 15, 2013) ("To the extent that [the debt collection law firm] Harris, by virtue of its representation of Defendant [NCO in the state court collection lawsuit], is holding documents that are relevant, responsive to Plaintiff's document requests to Defendant [in this FDCPA action], and not subject to a claim of privilege or work product, Defendant shall, no later than three weeks from the date of this Order, produce those documents to Plaintiff, as such documents are within Defendant's "control" for purposes of the discovery rules.").

York County Civil Court Housing Part.

12. The term "**2023 Putative Debt**" means the putative debt alleged in the state court case captioned *Arthur Ransome Houses L.P. against Leonarda Garcia,* LT-308781-23/NY in New York County Civil Court Housing Part.

13. The term "the **2023 Lawsuit**" means the state court case captioned *Arthur Ransome Houses L.P. against Leonarda Garcia,* LT-308781-23/NY in New York County Civil Court Housing Part.

14. The term "the **2024 Lawsuit**" means the state court case captioned *Arthur Ransome Houses L.P. against Leonarda Garcia,* LT-319223-24/NY in New York County Civil Court Housing Part.

15. The term "**2025 Collection Letter**" means the document attached as **Exhibit Y** to the Original Complaint in this action.

16. The term the "**2025 Certification to HPD**" means the May 2, 2025 pre-suit certification to HPD, notifying them of their intent to pursue a nonpayment eviction proceeding against Ms. Garcia, attached as Exhibit Z to the Original Complaint (a copy of which was included with the "**2025 Collection Letter**" mailed to Ms. Garcia.

17. The term "the **2025 Billing Statements**" means the rent billing statements dated 03/28/2025 and 06/20/2025 attached as Exhibit X and Exhibit BB to the Original Complaint [Dkt. No. 1]

18. The term "**The Rent Seeking Documents**" means the 2023 Lawsuit, the 2024 Lawsuit, the 2025 Collection Letter, the 2025 Certification to HPD, and the 2025 Billing Statements.

19. The term "**Rent Ledger**" means a document the same or substantially similar to the document attached as **Exhibit S** to the Original Complaint in this action.

20. The term the "**putative debt**" means the rental arrears the Attorney Defendants or the Landlord Defendants alleged are or were owed by Ms. Garcia.

21. "**Section 8**" means the federal housing subsidy program created 42 U.S.C. § 1437 and regulated by 24 C.F.R. § in which participants' monthly rent is subsidized by the government.

22. "**Public Housing Agency**" or "**PHA**" means the state or local governmental entity that administers the Section 8 program. Examples include NYCHA, HUD, HPD, DHCR, CDCLI.

23. **"NYCHA"** means New York City Housing Authority, a PHA that administers Section 8.

24. **"HPD" means New York City Housing of Preservation and Development, a PHA that administers Section 8.**

25. "**HQS Violations"** means Housing Quality Standards violations.

26. **"Tenant Share"** means the rental portion a Section 8 participant is responsible for paying to the landlord, which is 30% of the tenant's income.

27. **"Section 8 Share"** means the rental portion the PHA is responsible to pay the landlord pursuant to a tenant's Section 8 participation.

28. **"Identify" as to Non-Payment Proceedings** means the caption and index number of the Petition in the Non-Payment Proceeding and the total number of the Non-Payment Proceedings.

29. "**Eviction Certification Form**" means the certified form that is required to be sent to NYCHA before initiating eviction proceeding – including a non-payment proceeding -- against a

NYCHA Section 8 participant, such as the document attached as **Exhibit Z** to the Original Complaint in this action.

30. The term "**Non-Payment Proceeding**" means an action filed by Sperber Kahan Law Group PLLC, or its predecessors as counsel to the Landlord Defendants, that includes a demand for rent alleged to be due pursuant the alleged breach of a lease.

31. When a document production demand asks for "documents sufficient to demonstrate…," you may use an affidavit to respond to the demand if you wish.

32. These requests are continuing in nature. If any responsive documents come into your possession, custody or control after the service of your responses hereto, said additional documents shall be delivered to the undersigned expeditiously thereafter.

33. If a requested document no longer exists, state the reasons for the document's unavailability or nonexistence. If the requested document is no longer in your possession, identify the location of the document and from whom the document could be obtained.

34. Produce all documents in their original files as they are kept in the usual course of business. If any document produced has been removed from its original location, indicate such on the document produced, or produce a separate index noting the location in which the document was found.

35. PLEASE NOTE: If the documents sought exist in an electronic form please produce those documents in their native electronic format. Please produce a privilege log if you are asserting any attorney-client privilege, attorney work-product privilege, or assertion of confidentiality that complies with Local Rule 26.2(a) and (b).

**EXHIBIT B: DOCUMENTS TO BE PRODUCED**

Please produce all of the following documents in your possession, custody, or control:

1. Any contracts governing the relationships at any point in time between and among Abyssinian Development Corporation, Prestige Management, and "Ranson Houses" (as defined above and which specifically includes Arthur Ransome Houses L.P., Arthur Ransome Houses Corporation, and National Equity Fund).
    a. Plaintiff previously requested these documents by subpoena dated May 6, 2026 (5/6/2026 Subpoena Exhibit B Nos. 22, 23);
    b. Plaintiff also requested these documents during the deposition of Ms. Princess Palmer, Chief Operating and Financial Officer, of Abyssinian Development Corporation. (See Exhibit C herewith, 8/7/2026 Palmer Tr. at 39.) Ms. Palmer said she would look for them. (See Exhibit C.)
2. Any and all monthly reports, as referred to by Ms. Palmer during her August 7, 2026 deposition (see Exhibit D herewith, 8/7/2026 Palmer Tr. at 190-197), that Abyssinian Development Corporation has received from Prestige Management at any time.
    a. Plaintiff previously requested, and Ms. Palmer agreed to produce these documents (see Exhibit D, at Tr. 195-196);
3. Any and all rent ledgers, as referred to by Ms. Palmer during her August 7, 2026 deposition (see Exhibit E herewith, 8/7/2026 Palmer Tr. at 201-202), that Abyssinian has received from Prestige Management at any time:
    a. Plaintiff previously requested, and Ms. Palmer agreed to follow up on these documents. (See Exhibit E.);
4. Any and all rent ledgers concerning Plaintiff, including the "Alternate Balance Ledger," "subsidy only ledger," "combined ledger" as to Ms. Garcia as referred to by Ms. Palmer during her August 7, 2026 deposition (see Exhibit F herewith, 8/14/2026 Palmer Tr. at 88-90) in existence or that can be generated:
    a. Plaintiff previously requested, and Ms. Palmer agreed to direct Prestige Management to generate these documents for production. (See Exhibit F, 8/14/2026 Palmer Tr. at 89);
5. Any insurance policies and declaration sheets, and renewals, that may cover the claims brought by way of this suit, regardless of whether Prestige, Abyssinian or "Ransome Houses" have forwarded this claim to an insurance broker or insurance carrier or whether approved or denied:
    a. Plaintiff previously requested these documents during Ms. Palmer's August 14, 2026 deposition. (See Exhibit G herewith, 8/14/2026 Palmer Tr. at 82-85);
6. The correspondence regarding insurance coverage for the claims brought in this suit, including the application for coverage and response from the carrier, if any, including correspondence between Abyssinian Development Corporation, Prestige, "Ransome

Houses" and their insurance brokers:

   a. Plaintiff previously requested these documents during Ms. Palmer's August 14, 2026 deposition. (See Exhibit G);

7. Correspondence and other documents, including emails and texts, with any person regarding the putative debt or The Rent Seeking Documents the Lawsuit.

8. Any correspondence with anyone regarding this federal lawsuit or subpoenas with anyone, including, inter alia, among Abyssinian Development Corporation, Prestige Management, and "Ranson Houses" (as defined above and which specifically includes Arthur Ransome Houses L.P., Arthur Ransome Houses Corporation, and National Equity Fund), the attorneys or law firms representing any of these entities.

9. Documents you received from NYC Housing Preservation and Development regarding Housing Quality Standards Inspection and/or Reports for the Building, including Plaintiff's apartment.

10. The contracts that would govern Attorney Defendants' representation of Landlord Defendants related to The Rent Seeking Documents.

11. The contracts that govern the ownership of the Building, or the property management, accounting, or billing services related to the building.

12. Documents sufficient to identify each person who has an ownership interest in the Building or who provides accounting, billing, and property management services for the Building.

13. Documents sufficient to identify the persons involved in addressing or remedying the alleged HQS Violations in the Building.

14. If any of the documents you produce use abbreviations or codes, please provide a copy of a manual or other such document that reflects the meaning of said abbreviations or codes.

<u>PLEASE NOTE:</u> If the documents sought exist in an electronic form (e.g., a database of dates and locations of putative service of process) please produce those documents in its native electronic format.

**EXHIBIT C: August 7, 2026 Palmer Transcript at 39**

ownership interest.
Q. All right.
A. Arthur Ransome Corporation documents also support that relationship.
MR. KESHAVARZ: All right. So I'm going to say, I called for the production of -- and that basically means after our deposition, can you check to see if you can get the documents.
So I call for the production of any of the contracts that -- or other documents that delineate the relationship between Abyssinian and the corporation, or the corporation and the limited partnership.
Will you look to see if you have those documents.
THE WITNESS: Yes.
Q. Okay. What documents would they be, what kind of documents would show that, that relationship? Would it be --
A. It would be limited partnership agreement would show that relationship. And the formation documents for Arthur Ransome Corporation.
Q. The formation documents you said.
A. Yes, the bylaws and the I don't know if there is an operating agreement for the corporation,

**EXHIBIT D: August 7, 2026 Palmer Transcript at 190-197**

those two things weren't an issue, about how many tenant ledgers from the same tenant over a period of time, or different tenants, would have you to see to -- to infer that that may be a reason why it's happening, that it's something about the way their system is set up?

MR. MARSHALL: Objection to form.

A. It's difficult to say how many ledgers I would need to see to come to that conclusion.

Q. Okay. Well, do you have tenant ledgers for the Prestige properties that Abyssinian is involved with?

A. When you say ledgers that we are involved with, can you clarify what that means.

Q. So for the -- I think there were five properties that Ransome owns that Prestige does property management for; is that right?

A. Yes.

Q. Now they generate reports every year, at least once a year, that Prestige has regarding the tenants at those buildings, right?

A. There are monthly reports.

Q. Monthly.

A. The aged accounts receivable report is a monthly report that would list balances owed on a

tenant-by-tenant basis. I think it's called a status report in the Prestige system.

Q. Would you be able -- would you be able to tell from those reports if there were tenants who had Section 8 payments being made, and then had the payments stopped, would you be able to tell that from your reports, or from the information you have?

A. From those reports, no.

Q. The information that is the basis of those reports -- in other words, from any of the data that you have right now from Prestige, from any source --

A. Umm-hum.

Q. -- for all the years that Prestige has been doing property management for Abyssinian, in any of the properties --

A. Umm-hum.

Q. -- for Section 8 tenants, is there anything in any of that information that Abyssinian has, or can get, that would show whether Prestige is generating ledgers similar to the ones from my client where it shows Section 8, and then it shows stop Section 8 payments?

A. No. So the reports that we receive, that we receive monthly, are summary level reports. They would tell you the balance owed by tenant. They would

tell you of that balance, how much is 30, 60, 90 days. Those reports are not at a comparable level of detail as the tenant ledger.

So the only way to see the pattern that we were discussing earlier for this particular tenant, would be to get the tenant ledgers.

The only thing that would show in the monthly report would be a -- if it's the case of a suspended subsidy, there would be a, I guess, a high accounts receivable balance, or a high unpaid tenant arrears for the tenant. That would be, you know, the only indicator. Then again, without getting the ledger, you wouldn't be able to tell how much of that is -- you wouldn't be able to tell if there was a suspended subsidy without getting the ledger.

Q. From the reports that you have or information you have access to at Abyssinian --

A. Umm-hum.

Q. -- are you able to tell which of the tenants are on Section 8?

A. Yes.

Q. Okay. Would you be able to tell that even if Section 8 had suspended its payments for some period of time?

A. Yes.

Q. But you wouldn't have -- but would you show payments that are made by Section 8 for those tenants?

A. This report would show if a payment was made for a particular month. It wouldn't show activity over, you know, several months. It's a month-to-month report. It doesn't show me cumulatively for a year or for a six-or-seven-month period the Section 8 payments. I can only see for a particular month if Section 8 didn't pay a subsidy.

Q. Okay. So you'd have to look -- do you have those reports month to month?

A. Yes.

Q. Do you have those reports month to month going back for the entire time that Prestige was doing property management for Abyssinian properties?

A. No, based upon our achieve policy, we wouldn't keep reports going all the way back to 2008. 2008 would be when Prestige started managing Arthur Ransome Houses L.P. Our records wouldn't go back to 2008.

Q. How far back would the records go back?

A. I would have to check how far back. I know we easily have the last two or three years. I would have to look to see how far back we go in terms of what we would have saved between, you know, our

archives, and what would be in e-mail.

Q. Would the information be in spreadsheets?

A. It would be a pdf report.

Q. Is the pdf report generated from a spreadsheet?

A. I don't know much about the report writer function at Prestige. I believe most reports can be generated as Excel reports. They provide them to us as pdfs, because it's a user-friendly format. Most reports can be requested in an Excel format.

Q. Well, I have to check the agreements, but if you request information from Prestige, according to the property -- your agreement, your contract with them, they are suppose to provide that to you, right?

A. Yes. I don't -- when I reply to the question, I'm not implying that Prestige is not providing information.

My comment was that the reports are provided monthly in a pdf format, because that the just a more user friendly way for to us get through the reports. At times when I have requested an Excel version of the report, that's been provided without an issue.

Q. How many Excel reports would you think you might have?

A. I don't typically request the Excel reports, because the pdf reports have the information that I need. I don't recall that I have any Excel reports. I would have the monthly, you know, pdf report.

Q. And how does -- how do you save those monthly reports?

A. They either reside in my in-box, or we download them to our share file folder. We use Microsoft, we use Office 365. We would download to a, you know, a file folder, or I would just leave them in e-mail and go to them as needed.

MR. KESHAVARZ: Can you share those files with me?

I know we issued a subpoena for documents, and if you want, I can issue a second one if you want, if -- if that makes you feel more comfortable.

Are you able to provide me those monthly reports?

THE WITNESS: Yes.

MR. KESHAVARZ: Okay. Did you need a subpoena to from me to do that?

THE WITNESS: I have your subpoena.

MR. KESHAVARZ: Okay. So you will produce them.

THE WITNESS: Yes.

MR. KESHAVARZ: Okay, great.

THE WITNESS: I guess, what period of time for the monthly report.

MR. KESHAVARZ: So the monthly reports by Prestige, for as far as back as you have them. If you still have them, whatever you have.

THE WITNESS: Okay.

MR. KESHAVARZ: All right. So if a few of them are in Excel, that would be better. But I will take whatever you can get.

You think you can get those to me by say Tuesday?

THE WITNESS: Yes, I should be able to.

MR. KESHAVARZ: Okay.

THE WITNESS: Is there a Dropbox, or should I set up access to a -- send you a link to a share file with the report?

What's the best way -- they are going to be too much for me to send in an e-mail.

MR. KESHAVARZ: I can send you as a Dropbox link, if you want to do that.

THE WITNESS: Okay.

MR. KESHAVARZ: Or if it is easier -- or when you look and see, if it's easier for you to put

it on your end, I could do that.

But the easiest thing for me, is I will send you a Dropbox link.

All right.

THE WITNESS: That's fine.

MR. KESHAVARZ: So those are the reports.

Q. So that would list all the tenants in the -- in the buildings that Abyssinian owns, and it will also list which ones are on Section 8, and it will show the payments for each month in every report.

A. Yes.

Q. And would it show if the payments are made by Section 8 or by the tenant?

A. Yes.

MR. KESHAVARZ: Okay. All right. So that's that.

And just for the court reporter -- just so I can say on the record, I call for the production of those documents. Just so when I look at the transcript I can see where it is.

Q. Let me just touch on, you said report writer, what's that?

A. So when the reports are downloaded from Yardi, they have a -- another, I guess, software that sits on top of, or that interfaces is probably a

**EXHIBIT E: August 7, 2026 Palmer Transcript at 201-202**

wouldn't know.
Q. If -- okay. If a ledger showed FHEPS payments, and then stop, would that -- was that something that would be flag for you to want to look into why that happened, so the tenant wasn't accidentally charged for rent that wasn't owed?
A. If the City FHEPS voucher payment stopped, yes, you would inquire and ask why. Yes, you would make the inquiry and ask why.
MR. KESHAVARZ: All right, that's that.
Do you know if -- I know norm -- are there any of the rent ledgers that Abyssinian has from Prestige property, so are there any at all.
THE WITNESS: Are there any rent ledgers.
I would have to check archives to see if we have any rent ledgers. Off the top of my head I'm not recalling that I have gotten any rent ledgers recently. But I can he take it as a followup point and check to see if we have any rent ledgers.
MR. KESHAVARZ: Yeah, from any period of time.
THE WITNESS: Okay.
MR. KESHAVARZ: As far back as you can go, for anything from Prestige that would be for -- that could be for a Section 8 tenant. And if you are not

sure --

THE WITNESS: For Section 8 tenant or any tenant.

MR. KESHAVARZ: If could you -- if you could limit it to Section 8 tenants, that would be good. If you can't do that, then -- then I will take what you can get. But the preferable would be Section 8.

THE WITNESS: Okay. We will look to see what we have in the archives on that.

MR. KESHAVARZ: All right. And then that's that. And I think we will adjourn and --

THE WITNESS: Okay.

MR. MARSHALL: I would just like to ask a few questions, since we are adjourning.

MR. KESHAVARZ: Yeah.

MR. MARSHALL: Just procedurally for my clarification.

Good afternoon, Ms. Palmer.

I will be very brief.

But to introduce myself, my name is Adam Marshall. I'm an attorney with Kaufman Dolowich. We represent Mr. Kahan and the Sperber Kahan Law Group in this same lawsuit where Mr. Keshavarz represents the plaintiff.

**EXHIBIT F: August 14, 2026 Palmer Transcript at 88-90**

P. Palmer

"Alternate Balance." Do you know what that means?

A. So Alternate Balance is the acronym or notation used by Prestige when there's a subsidy. So the Alternate Balance would be the subsidy portion for that particular tenant.

Q. The Section 8 share.

So this Alternate Balance ledger, should that have been disclosed to the law firm when the law firm filed suit for non-payment action against my client?

A. If it had been disclosed to the attorney?

Q. Should have been disclosed.

A. I wouldn't be able to comment or answer the...

Q. Is Abbyssinian able to direct Prestige to run rent ledgers?

A. Yes.

Q. Can you direct Ransome -- Prestige to run rent ledger as to my client, Leonarda Garcia, and produce those next week?

A. Can I ask them to run ledgers for Leonarda Garcia?

Q. My client.

P. Palmer

A. For what period? For what period of time?

Q. Next week.

A. For the ledger -- how far back do you want to go for the ledger?

Q. Whatever they have. Can you --

A. Is that the Alternate Balance ledger that we're looking at now? I can't see the top.

Q. ** Whatever ledgers that they can generate for my client, can you direct Prestige to generate those and produce them next week?

A. Yes.

Q. Why would Prestige want -- why would one want to generate an Alternate Balance spreadsheet as opposed to regular rent ledgers?

A. So the Alternate Balance ledger allows you to see activity just for the subsidy. So it would exclude -- it should exclude any tenant portion, tenant payment.

Q. That's a type of ledger that Prestige is able to print or generate?

A. Yes. So within Yardi you have the ability to run a tenant only ledger, the Alternate Balance or subsidy only ledger, and then you can

P. Palmer

also run a combined ledger that would show both tenant and tenant portion.

Q. Any other types of ledgers and rent?

A. Say that again. I couldn't hear you. I'm sorry.

Q. ** Any other ledger that can be run from Yardi -- any other tenant ledger that can be run from Yardi for my client other than those two kinds?

A. The third kind is just the combined that would have both tenant and subsidy activity.

Q. ** Okay. Can you generate all three, please?

A. Yes.

Q. And just going lastly to --

A. Unfortunately I don't have my charger. I'm almost out of charge.

Q. I'm almost done.

A. I just don't want my phone to die. I'm at like seven percent.

Q. That would be plenty.

Page 67 PRE, the ledger, on 4/1/2024 it lists a bad debt of $12,497.76; is that right?

A. Yes.

**EXHIBIT G: August 14, 2026 Palmer Transcript at 82-85**

P. Palmer

Abbyssinian Development Corporation on, you know, coverage decision by the respective carrier.

I think in this case some of the servicing have been directly with Prestige. There was some servicing that came to Abbyssinian Development Corporation, but there was some confusion on where all of the Arthur Ransome Houses servicing was happening, and I think that created some of the delay with getting counsel in place.

Q. Do you have those different insurance policies that were being looked at in relation to this lawsuit?

A. I should have them. There may be one I don't have, but I would be able to request whatever I don't have.

Q. Do you think you could forward those insurance policies next Friday when you produce the other documents?

MR. MARSHALL: Same objection as before.

A. Okay. That would be -- what would be -- you need the insurance policies? Can you just give some context?

Q. ** Sure. Any of the insurance policies

P. Palmer

that were referenced by the broker in terms of whether or not they would be covering this claim, can you get me those insurance policies?

A. Can I confer with the broker?

Q. Sure.

A. We typically don't provide insurance policies.

Q. Who is the broker in this case?

A. So broker in this case -- let me see. H&N Agency is the current broker.

I believe we had to reach out to the prior broker at USI. They would have been the broker at the date of incident. But we started the inquiry with the initial -- with the current broker, and then had some correspondence with the previous broker because of the -- I think the date of incident fell under the coverage period where USI was the broker in place.

Q. So was there correspondence between different brokers and Abbyssinian going back and forth?

A. So there would be conversation between myself and the two brokers. There wouldn't be any conversation between the two brokers.

P. Palmer

Q. Are there documents going back and forth between Abbyssinian and the two brokers?

A. Yes.

Q. What would be the nature of those documents?

A. It would be sharing the claims and then, you know, asking for information on whether the incident was a covered matter.

Q. Was a law firm involved in that on behalf of Abbyssinian?

A. No.

Q. And I'm sorry, the documents were between Abbyssinian and both of the brokers or only one of them?

A. There was -- there were inquiries and questions with both. I think because this date of incident fell outside of when H&N agency was the broker that there was limited correspondence with H&N -- "because the date of incident is X. We weren't the broker at the time. So now you need to go to the prior broker."

Q. ** By next Friday can you give me any of the correspondence that you have between Abbyssinian and the two brokers?

P. Palmer

MR. MARSHALL: I'm going to make the same objection noting the scope of the existing subpoena.

Q. You can answer.

A. I would want to confer with the broker. Again, we typically don't provide this type of documentation. I would like an opportunity to confer with the broker on the document request.

Q. Sure. Fair enough.

** I'll just add that among the list of documents in the supplemental subpoena that I'm going to issue.

A. Understood.

MR. MARSHALL: Adam, as you know, we're getting close.

MR. KESHAVARZ: Getting close, I know.

MR. MARSHALL: We're getting past it. I'm giving a friendly warning.

MR. KESHAVARZ: I don't know if we're past it, but I appreciate the friendly warning and I -- well, I think I just had a couple of questions more, but did you want to ask any questions you had, Adam, and then I can --

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | | |
|---|---|---|
| Leonarda Garcia<br>*Plaintiff*<br>v.<br>Eric H. Kahan et al.<br>*Defendant* | ) | Civil Action No. 1:25-cv-08489-JGK |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Abyssinian Development Corporation
by and through the New York Secretary of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 1223

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached

| Place: The Law Office of Ahmad Keshavarz, 16 Court Street, 26th Floor, Brooklyn, NY 11241 | Date and Time: 04/09/2026 12:00 pm |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 03/25/2026

*CLERK OF COURT* OR /s/

*Signature of Clerk or Deputy Clerk* *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Leonarda Garcia, who issues or requests this subpoena, are:

Ahmad Keshavarz, 16 Court Street, 26 Fl, Brooklyn, NY 11241 ahmad@newyorkconsumerattorney.com (347) 308-4859

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 1:25-cv-08489-JGK

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ______________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________
______________________________________________________________________
______________________________________________ on *(date)* ______________ ; or

❒ I returned the subpoena unexecuted because: ______________________________
______________________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________________ .

My fees are $ ______________ for travel and $ ______________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________________
*Server's signature*

______________________________________
*Printed name and title*

______________________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

Plaintiff incorporates by reference the uniform discovery definitions of Local Rule 26.3. In addition to the uniform discovery definitions of Local Rule 26.3, following terms shall have the following meanings:

1. "**Plaintiff**" means the Plaintiff in this federal lawsuit, Leonarda Garcia.
2. "**Answering Defendants**" means the defendants who have appeared in this federal lawsuit: Sperber Kahan Law Group PLLC, Eric H. Kahan, and Prestige Management, Inc.
3. "**Landlord Defendants**" means Prestige Management, Inc., and non-answering Defendant Arthur Ransome Houses L.P.
4. "**Attorney Defendants**" means Sperber Kahan Law Group PLLC and Eric H. Kahan.
5. "**Building**" means the property bearing the address 151 West 123rd Street, New York, New York 10027.
6. "**You**" or "**Your**" means Abyssinian Development Corporation, their successors, predecessors, divisions, subsidiaries, present and former officers, agents, employees, and all other persons acting on behalf of the responding party or its successors, predecessors, divisions, and subsidiaries.
7. "**Possession, custody, or contro**l" of an item means that the person either has physical possession of the item or has a right to possession that is equal or superior to the person who has physical possession of the item.[1]
8. The term "**person**" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.
9. The term "**2025 Putative Debt**" means the putative debt alleged in the documents attached as **Exhibit Y** and **Exhibit Z** to the Original Complaint in this action.
10. The term "**2024 Putative Debt**" means the putative debt alleged in the state court case captioned *Arthur Ransome Houses L.P. against Leonarda Garcia,* LT-319223-24/NY in New York County Civil Court Housing Part.
11. The term "**2023 Putative Debt**" means the putative debt alleged in the state court case

[1] Please note that "the clear rule is that documents in the possession of a party's current or former counsel are deemed to be within that party's 'possession, custody and control.'" *MTB Bank v. Federal Armored Express*, 93 Civ. 5594 (LBS), 1998 WL 43125 at * 4 (S.D.N.Y. Feb. 2, 1998) ("Under Fed.R.Civ.P. 34, which governs the production of documents during discovery, the clear rule is that documents in the possession of a party's current or former counsel are deemed to be within that party's 'possession, custody and control.'"). *See also Polanco v. NCO Portfolio Management, Inc.*, 2013 WL 3733391at * 2 (S.D.N.Y. July 15, 2013) ("To the extent that [the debt collection law firm] Harris, by virtue of its representation of Defendant [NCO in the state court collection lawsuit], is holding documents that are relevant, responsive to Plaintiff's document requests to Defendant [in this FDCPA action], and not subject to a claim of privilege or work product, Defendant shall, no later than three weeks from the date of this Order, produce those documents to Plaintiff, as such documents are within Defendant's "control" for purposes of the discovery rules.").

captioned *Arthur Ransome Houses L.P. against Leonarda Garcia,* LT-308781-23/NY in New York County Civil Court Housing Part.

12. The term "the **2023 Lawsuit**" means the state court case captioned *Arthur Ransome Houses L.P. against Leonarda Garcia,* LT-308781-23/NY in New York County Civil Court Housing Part.
13. The term "the **2024 Lawsuit**" means the state court case captioned *Arthur Ransome Houses L.P. against Leonarda Garcia,* LT-319223-24/NY in New York County Civil Court Housing Part.
14. The term "**2025 Collection Letter**" means the document attached as **Exhibit Y** to the Original Complaint in this action.
15. The term the "**2025 Certification to HPD**" means the May 2, 2025 pre-suit certification to HPD, notifying them of their intent to pursue a nonpayment eviction proceeding against Ms. Garcia, attached as Exhibit Z to the Original Complaint (a copy of which was included with the "**2025 Collection Letter**" mailed to Ms. Garcia.
16. The term "the **2025 Billing Statements**" means the rent billing statements dated 03/28/2025 and 06/20/2025 attached as Exhibit X and Exhibit BB to the Original Complaint [Dkt. No. 1]
17. The term "**The Rent Seeking Documents**" means the 2023 Lawsuit, the 2024 Lawsuit, the 2025 Collection Letter, the 2025 Certification to HPD, and the 2025 Billing Statements.
18. The term "**Rent Ledger**" means a document the same or substantially similar to the document attached as **Exhibit S** to the Original Complaint in this action.
19. The term the "**putative debt**" means the rental arrears the Attorney Defendants or the Landlord Defendants alleged are or were owed by Ms. Garcia.
20. "**Section 8**" means the federal housing subsidy program created 42 U.S.C. § 1437 and regulated by 24 C.F.R. § in which participants' monthly rent is subsidized by the government.
21. "**Public Housing Agency**" or "**PHA**" means the state or local governmental entity that administers the Section 8 program. Examples include NYCHA, HUD, HPD, DHCR, CDCLI.
22. **"NYCHA"** means New York City Housing Authority, a PHA that administers Section 8.
23. **"HPD" means New York City Housing of Preservation and Development, a PHA that administers Section 8.**
24. "**HQS Violations"** means Housing Quality Standards violations.
25. **"Tenant Share"** means the rental portion a Section 8 participant is responsible for paying to the landlord, which is 30% of the tenant's income.
26. **"Section 8 Share"** means the rental portion the PHA is responsible to pay the landlord pursuant to a tenant's Section 8 participation.
27. **"Identify" as to Non-Payment Proceedings** means the caption and index number of the Petition in the Non-Payment Proceeding and the total number of the Non-Payment Proceedings.
28. "**Eviction Certification Form**" means the certified form that is required to be sent to NYCHA before initiating eviction proceeding – including a non-payment proceeding -- against a NYCHA Section 8 participant, such as the document attached as **Exhibit Z** to the

Original Complaint in this action.

29. The term "**Non-Payment Proceeding**" means an action filed by Sperber Kahan Law Group PLLC, or its predecessors as counsel to the Landlord Defendants, that includes a demand for rent alleged to be due pursuant the alleged breach of a lease.

30. When a document production demand asks for "documents sufficient to demonstrate…," you may use an affidavit to respond to the demand if you wish.

31. These requests are continuing in nature. If any responsive documents come into your possession, custody or control after the service of your responses hereto, said additional documents shall be delivered to the undersigned expeditiously thereafter.

32. If a requested document no longer exists, state the reasons for the document's unavailability or nonexistence. If the requested document is no longer in your possession, identify the location of the document and from whom the document could be obtained.

33. Produce all documents in their original files as they are kept in the usual course of business. If any document produced has been removed from its original location, indicate such on the document produced, or produce a separate index noting the location in which the document was found.

34. Unless otherwise requested in a specific demand, **the Relevant Time Period for the requests is January 1, 2023 to the present**.

35. PLEASE NOTE: If the documents sought exist in an electronic form please produce those documents in their native electronic format. Please produce a privilege log if you are asserting any attorney-client privilege, attorney work-product privilege, or assertion of confidentiality that complies with Local Rule 26.2(a) and (b).

**EXHIBIT B: DOCUMENTS TO BE PRODUCED**

Please produce all of the following documents in your possession, custody, or control:

1. Documents regarding Plaintiff, each putative debt, or attempts to collect each putative debt.
2. The recordings of telephone calls with Plaintiff or any person regarding Plaintiff, the putative, or attempts to collect the putative debt.
3. Your account notes, screen shots, and any other documentation regarding Plaintiff, the putative debt, or attempts to collect the putative debt.
4. Documents sufficient to demonstrate the identity of every person who was involved in attempts to collect the debt.
5. Any contracts or agreements that govern the collection of the putative debt.
6. The documents, if any, reflecting your policies and procedures as to consumers or tenants who participate in Section 8.
7. The documents reflecting the policies and procedures in connection with the use of rent ledgers and/or breakdowns such as the Rent Ledgers used in the Lawsuits against Plaintiff.
8. The documents reflecting the policies and procedures in connection with the Collection Letter, including any template or program used to generate the letter.
9. The documents reflecting the policies and procedures in connection with the Collection Letter, including any template or program used specifically for tenants who participate in Section 8.
10. Documents reflecting the policies and procedures in verifying the amounts sought in rent ledgers, including, without limitation, any documents used to verify the amounts sought from Ms. Garcia.
11. Any insurance policies and declaration sheets, and renewals, that may cover the claims brought by way of this suit, regardless of whether you have forwarded this claim to your insurance carrier.
12. The correspondence regarding insurance coverage for the claims brought in this suit, including the application for coverage and response from the carrier, if any.
13. The documents you refer to in your initial disclosures.
14. If any of the documents you produce use abbreviations or codes, please provide a copy of a manual or other such document that reflects the meaning of said abbreviations or codes.
15. Correspondence and other documents, including emails and texts, with any person regarding the putative debt or The Rent Seeking Documents the Lawsuit.

16. Documents you received from NYC Housing Preservation and Development regarding Housing Quality Standards Inspection and/or Reports for the Building, including Plaintiff's apartment.
17. The contracts that would govern Attorney Defendants' representation of Landlord Defendants related to The Rent Seeking Documents.
18. The contracts that govern the ownership of the Building, or the property management, accounting, or billing services related to the building.
19. Documents sufficient to identify each person who has an ownership interest in the Building or who provides accounting, billing, and property management services for the Building.
20. Documents sufficient to identify the persons involved in addressing or remedying the alleged HQS Violations in the Building.
21. Documents sufficient to identify any accounting firm that does your accounting.
22. Any contracts governing the relationships between and among Abyssinian Development Corporation, Arthur Ransome, and Prestige in effect during the Relevant Period.
23. Any contracts governing the relationships between and among Abyssinian Development Corporation, Arthur Ransome, and Prestige in effect during the Relevant Period.

PLEASE NOTE: If the documents sought exist in an electronic form (e.g., a database of dates and locations of putative service of process) please produce those documents in its native electronic format.

ATTORNEY(S) : Law Offices of Ahmad Keshavarz
INDEX # : 1:25-cv-08489-JGK
PURCHASED/FILED :
STATE OF : NEW YORK
COURT : U.S. District
COUNTY/DISTRICT : Southern Dist.

# AFFIRMATION OF SERVICE - SECRETARY OF STATE

Leonarda Garcia

Plaintiff(s)

against

Eric H. Kahan, et al

Defendant(s)

STATE OF NEW YORK )
COUNTY OF ALBANY ) SS
CITY OF ALBANY )

**DESCRIPTION OF PERSON SERVED:** Approx. Age: 30 Yrs

Weight: 120 Lbs Height: 5'3" Gender: Female Race: White

Hair color: Brown Other:

**Robert Guyette**, being duly sworn, deposes and says: deponent is over the age of eighteen (18) years; is not a party to this action, and resides in the State of NY, and that on **May 14, 2026**, at **3:20 PM**, at the office of the Secretary of State of the State of NY, located at 99 Washington Ave, 6th Fl, Albany, New York 12231 deponent served:

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

on

**Abyssinian Development Corporation**,

the Defendant in this action, by delivering to and leaving with **Consuelo Aguilera** AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the Office of the Secretary of State of the State of New York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State a fee of $40 dollars; That said service was made pursuant to Section **NOT-FOR-PROFIT CORPORATION LAW §306.**

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

I affirm this **MAY 14, 2026**, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, except as to matters alleged on information and belief and as to those matters I believe it to be true, and I understand that this document may be filed in an action or proceeding in a court of law.

X ______________________
ROBERT GUYETTE

**Invoice•Work Order #** 2619982
Attorney File # **Garcia vs. Kahan**

ATTORNEY(S) : Law Offices of Ahmad Keshavarz
INDEX # : 1:25-cv-08489-JGK
PURCHASED/FILED :
STATE OF : NEW YORK
COURT : U.S. District
COUNTY/DISTRICT : Southern Dist.

# AFFIRMATION OF SERVICE - SECRETARY OF STATE

Leonarda Garcia

Plaintiff(s)

against

Eric H. Kahan, et al

Defendant(s)

STATE OF NEW YORK )
COUNTY OF ALBANY ) SS
CITY OF ALBANY )

**DESCRIPTION OF PERSON SERVED:** Approx. Age: 30 Yrs

Weight: 120 Lbs Height: 5'3" Gender: Female Race: White

Hair color: Brown Other:

**Robert Guyette**, being duly sworn, deposes and says: deponent is over the age of eighteen (18) years; is not a party to this action, and resides in the State of NY, and that on **May 14, 2026**, at **3:20 PM**, at the office of the Secretary of State of the State of NY, located at 99 Washington Ave, 6th Fl, Albany, New York 12231 deponent served:

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

on

**Arthur Ransome Houses LP**,

the Defendant in this action, by delivering to and leaving with **Consuelo Aguilera** AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the Office of the Secretary of State of the State of New York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State a fee of $40 dollars; That said service was made pursuant to Section **PARTNERSHIP LAW §121-109(A) (LP'S).**

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

I affirm this **MAY 14, 2026**, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, except as to matters alleged on information and belief and as to those matters I believe it to be true, and I understand that this document may be filed in an action or proceeding in a court of law.

X ______________________

ROBERT GUYETTE

**Invoice·Work Order #** 2619999
Attorney File # **Garcia vs. Kahan**

ATTORNEY(S) : Law Offices of Ahmad Keshavarz
INDEX # : 1:25-cv-08489-JGK
PURCHASED/FILED :
STATE OF : NEW YORK
COURT : U.S. District
COUNTY/DISTRICT : Southern Dist.

## AFFIRMATION OF SERVICE - SECRETARY OF STATE

Leonarda Garcia

Plaintiff(s)

against

Eric H. Kahan, et al

Defendant(s)

STATE OF NEW YORK )
COUNTY OF ALBANY ) SS
CITY OF ALBANY )

**DESCRIPTION OF PERSON SERVED:** Approx. Age: 30 Yrs

Weight: 120 Lbs Height: 5'3" Gender: Female Race: White

Hair color: Brown Other:

**Robert Guyette**, being duly sworn, deposes and says: deponent is over the age of eighteen (18) years; is not a party to this action, and resides in the State of NY, and that on **May 14, 2026**, at **3:20 PM**, at the office of the Secretary of State of the State of NY, located at 99 Washington Ave, 6th Fl, Albany, New York 12231 deponent served:

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

on

**Arthur Ransome Housing Corporation**,

the Defendant in this action, by delivering to and leaving with **Consuelo Aguilera** AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the Office of the Secretary of State of the State of New York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State a fee of $40 dollars; That said service was made pursuant to Section **BUSINESS CORPORATION LAW §306.**

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

I affirm this **MAY 14, 2026**, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, except as to matters alleged on information and belief and as to those matters I believe it to be true, and I understand that this document may be filed in an action or proceeding in a court of law.

X [signature]

ROBERT GUYETTE

**Invoice•Work Order #** 2620000
Attorney File # **Garcia vs. Kahan**