UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LEONARDA GARCIA,<br><br>Plaintiff,<br><br>-against-<br><br>ERIC H. KAHAN, SPERBER KAHAN LAW GROUP PLLC, ARTHUR RANSOME HOUSES LP, and PRESTIGE MANAGEMENT, INC.<br><br>Defendants. | : | 1:25-cv-08489 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH NON-PARTY SUBPOENA**

FURMAN KORNFELD & BRENNAN LLP
*Attorneys for Prestige Management, Inc.*
88 Pine Street, 32nd Floor
New York, New York 10006
Tel: (212) 867-4100

Of Counsel:

Rachel Aghassi, Esq.
Sarah M. Igarashi, Esq.

## INTRODUCTION

This Memorandum of Law is submitted in support of the motion by Prestige Management, Inc. ("Prestige") pursuant to Federal Rules of Civil Procedures 26 and 45, seeking an Order quashing the non-party Subpoena ("Subpoena") served on Abyssinian Development Corporation ("Abyssinian") by Plaintiff LEONARDA GARCIA ("Plaintiff") and barring Plaintiff from using surreptitiously obtained information irrelevant to the claims in the operative Complaint.

On or about October 14, 2025, Plaintiff commenced this action against Defendants ERIC H. KAHAN, SPERBER KAHAN LAW GROUP PLLC (collectively, "Kahan"), ARTHUR RANSOME HOUSES LP ("Ransome"), and Prestige (collectively, "Defendants"), alleging claims predicated on violations of the Fair Debt Collection Practices Act ("FDCPA") against attorney Eric H. Kahan and Sperber Kahan law Group PLLC and asserting tenuous claims under New York's General Business Law ("GBL") § 349 and for negligence against Prestige and defendant landlord Arthur Ransome Houses LP ("Ransome") for debt collection lawsuits (the "Debt Actions") against Plaintiff to collect rent arrears. Prestige was dismissed from this case on June 15, 2026. Plaintiff has until September 30, 2026 to amend the Complaint against Prestige. On August 27, 2026, Plaintiff issued yet another non-party subpoena, this time on Abyssinian, returnable on September 11, 2026 ("the Subpoena"), requesting undiscoverable information relating solely to other tenants of Abyssinian.

Significantly, the subpoena to Abyssinian, like the other discovery demands that Plaintiff has issued since Prestige's dismissal from the action, seeks materials irrelevant to the present litigation that pertain solely to other tenants of Abyssinian's tenants in yet another illicit attempt by Plaintiff to fish for information to continue this frivolous action against Prestige. The deposition transcripts Plaintiff attaches to the subpoena make clear that the documents sought include information on tenants other than Plaintiff, and Plaintiff does not even attempt to demonstrate a

connection between these other tenants and the operative allegations in the Complaint. As pointed out in our Motion to Quash Plaintiff's other attempts to collect improper information from other individuals and entities, Dkt. Nos. 111-113, including the attempts demonstrated in the deposition transcripts attached to the instant Subpoena, Plaintiff's search for information of tenants other than Plaintiff was the subject of extensive motion practice, which resulted in Magistrate Judge Gary Stein directing Plaintiff at oral argument on June 17, 2026 that such requests were overbroad. On the record, Judge Stein cautioned Plaintiff that seeking information about unrelated tenants constituted an improper fishing expedition for additional unrelated clams against Prestige. Instead of complying with this directive, Plaintiff instead took advantage of the interim period when Prestige was out of the case and largely unable to object to seek such information.

As set forth in our prior Motion to Quash, Plaintiff has refused our good-faith requests to refrain from these inappropriate requests for information about other tenants from other parties and non-parties. Without responding to the legal authorities raised in the prior Motion to Quash, including the clear directives from Judge Stein that Plaintiff refrain from conducting a fishing information for irrelevant information of other tenants, Plaintiff instead persists with these attempts by serving the present subpoena to non-party Abyssinian seeking the same information.

Plaintiff set the return date for the instant Subpoena to September 11, 2026, continuing the pattern of behavior pointed out in the prior Motion to Quash of surreptitiously seeking irrelevant information during the interim period when Prestige is temporarily not an active party in the case. Once again, Plaintiff did not notify Prestige of the Subpoena. Unless this Subpoena is quashed, Prestige will once again be in the extremely prejudicial position where Plaintiff is taking advantage of this period to seek illicit information without Prestige's involvement or ability to object. Therefore, pursuant to Fed. R. Civ. P. 45, Plaintiff's subpoena dated August 27, 2026 should be

quashed on the grounds that it is overly broad on its face and improperly seeks documents and information not relevant to the operative Complaint.

Prestige seeks an Order staying the enforcement of the Subpoena pending this Honorable Court's determination on the merits of the instant motion. Additionally, Prestige respectfully requests that Plaintiff be barred from using any material on tenants unrelated to this litigation improperly obtained, as evidenced in the deposition transcript attached to the instant Subpoena and the extent of which is still unknown to Prestige.

## FACTUAL BACKGROUND

On or about October 14, 2025, Plaintiff commenced the instant action by the filing of a Complaint in the U.S. District Court, Southern District of New York. The instant action asserts claims predicated on an alleged violation of the FDCPA against Kahan for the Debt Actions against Plaintiff to collect rent arrears. The Complaint also attempted to assert tenuous claims under New York's General Business Law § 349 and for negligence against defendant landlord Arthur Ransome Houses LP ("Ransome"), and Prestige, which is Ransome's agent. A copy of the Complaint is annexed to the Aghassi Declaration as **Exhibit "A".**

On March 4, 2026, Prestige moved to dismiss Plaintiff's claims against it. *See* Dkt. No. 44.

On April 9, 2026, a Certificate of Default was filed against Ransome. **Exhibit "B".**

On April 16, 2026, while the motion was pending and discovery ongoing, the Court held a status conference hearing. At that hearing, Prestige's counsel specifically raised a concern that Plaintiff would seek materials not relating to the allegations of Plaintiff specifically. **Exhibit "C"**, p. 42. The Court then confirmed that the Court would "not authorize a fishing expedition into hundreds or thousands of files" pertaining to other tenants. *Id.*, p. 45.

On May 12, 2026, while Prestige's motion was still pending, the parties filed a joint status letter on discovery, wherein Prestige again pointed out that Plaintiff was seeking irrelevant, non-discoverable information about tenants other than Plaintiff. *See* Dkt. No. 81. On June 15, 2026, two days before a scheduled oral argument on the discovery disputes in the matter, including Plaintiff's demands for the same undiscoverable documents and information, the Court dismissed Plaintiff's claims against Prestige for failure to state a cause of action. **Exhibit "D"**. The Court found that the GBL § 349 claim against Prestige failed because Plaintiff did not establish that Prestige's actions or practices had a broader impact on consumers at large, as required to show consumer-oriented conduct. *Id.* at 5. Accordingly, the Court also found that Plaintiff's negligence claims against Prestige also failed as a matter of law because Plaintiff relied entirely on the deficient § 349 claim as the sole basis to establish a duty owed by Prestige to Plaintiff. *Id.* at 7-8.

All parties, including Prestige, appeared for a hearing on discovery before Judge Stein on June 17, 2026. At that oral argument, it was agreed that some discovery could proceed before Plaintiff's time to amend the Complaint to assert additional claims against Prestige expired, but Plaintiff was explicitly directed by Judge Stein not to turn this process into a fishing expedition for documents and information unrelated to Plaintiff and the Debt Actions at issue in order to find additional claims to bring against Prestige. This specifically included information about other tenants.

On August 11, 2026, Plaintiff requested a third extension of time to amend the Complaint until September 30, 2026. **Exhibit "E".** At that time, the undersigned raised our concerns about Plaintiff's search for information and documents pertaining to other tenants that were unrelated to Plaintiff's claims, and our concern that this additional time was sought in order to obtain illicit information related to other tenants. On August 12, Plaintiff's counsel and the undersigned met

and conferred about these concerns. In a thinly-veiled attempt to circumvent Judge Stein and seek improper, irrelevant documents and information from non-parties unaware of the full facts and circumstances of this case, Plaintiff refused to refrain from seeking such information. Plaintiff instead cited a variety of personal matters including a week-long vacation, status as a solo practitioner, obligations to onboard a new associate, and work in unrelated cases as the reason for a request for an extension. *Id.*

Instead, Prestige later discovered that Plaintiff was using the additional time to seek discovery related to other tenants. Plaintiff did not provide Prestige with notice of any of these requests or other developments in discovery, provide Prestige with any of the materials disclosed, or involve Prestige in discovery in any way. Prestige continues to remain in the dark about the full extent of discovery that has occurred since its dismissal.

Two days after Prestige granted Plaintiff the extension of time to amend the complaint as a professional courtesy due to Plaintiff's counsel's claimed personal obligations, Prestige became aware that Plaintiff conducted the deposition of Princess Palmer, a representative of Ransome and Abyssinian, who appeared *pro se*, and that at the deposition, Plaintiff sought a significant amount of testimony and documents about other tenants of buildings managed by Prestige. Prestige was not notified about this deposition, or did Prestige have an opportunity to object or appear.

As stated above, in the course of litigating the present case, on or about August 14, 2026, Plaintiff issued a subpoena on non-party HPD, seeking production of documents by August 24, 2026. **Exhibit "F".** This subpoena to HPD requested documents solely relating to other tenants of properties managed by Prestige. Prestige moved to quash both the August 14, 2026 subpoena and the other improper discovery demands Plaintiff made for irrelevant information relating to other tenants. Dkt. Nos. 111-113. In response, Plaintiff withdrew the subpoena to HPD. Dkt. No. 114.

On or about August 27, 2026, Plaintiff issued a another subpoena, this time on non-party Abyssinian, seeking production of documents by September 11, 2026. **Exhibit "G".** Plaintiff did not provide Prestige or its counsel with a copy of the subpoena. On their face, the document requests (and their multiple sub-requests) are overbroad and irrelevant to Plaintiff's claims, amounting to an impermissible fishing expedition to seek evidence unrelated to the presently operative complaint in order to assert additional claims against Ransome and Prestige. *Id.*

Request No. 2 of the Subpoena seeks, without limitation, "[a]ny and all monthly reports […] that Abyssinian Development Corporation has received from Prestige Management at any time." This request specifically refers to the deposition transcript of Palmer, which states:

> Q: […] about how many tenant ledgers from the same tenant over a period of time, or different tenants, would have you to see to – to infer that that may be a reason why it's happening, that it's something about the way their system is set up?
> […]
> A: It's difficult to say how many ledgers I would need to come to that conclusion
> […]
> Q: Would you be able – would you be able to tell from those reports if there were tenants who had Section 8 payments being made, and then had the payments stopped, would you be able to tell that from your reports, or from the information you have?
> A: From those reports, no.
> Q: "The information that is the basis of those reports – in other words, from any of the data that you have right now from Prestige, from any source […] for all the years that Prestige has been doing property management for Abyssinian, in any of the properties […] for Section 8 tenants, is there anything in any of that information that Abyssinian has, or can get, that would show whether Prestige is generating ledgers similar to the ones from my client where it shows Section 8, and then it shows stop Section 8 payments?
> A: No. […]
> Q: From the reports that you have or information you have access to at Abyssinian […] are you able to tell which of the tenants are on Section 8?
> A: Yes.
> […]
> Q: Can you share those files with me? […] Are you able to provide me those monthly reports?
> A: I guess, what period of time for the monthly report.
> Q: So the monthly reports by Prestige, for as far back as you have them. If you still have them, whatever you have.

> […]
> Q: So that would list all the tenants in the – in the buildings that Abyssinian owns, and it will also list which ones are on Section 8, and it will show the payments for each month in every report.
> A: Yes.

*Id.*

Request No. 3 of the Subpoena seeks, without limitation, "[a]ny and all rent ledgers." This request also refers to the deposition transcript of Palmer, which states:

> Q: [A]re there any of the rent ledgers that Abyssinian has from Prestige property […]
> A: Are there any rent ledgers.
> I would have to check archives to see if we have any rent ledgers. Off the top of my head I'm not recalling that I have gotten any rent ledgers recently. But I can […] take it as a followup point and check to see if we have any rent ledgers.
> Q: Yeah, from any period of time.
> A: Okay.
> Q: As far back as you can go, for anything from Prestige that would be for – that could be for a Section 8 tenant. And if you are not sure –
> A: For Section 8 tenant or any tenant.
> Q: […] if you could limit it to Section 8 tenants, that would be good. If you can't do that, then – then I will take what you can get. But the preferable would be Section 8.

*Id.*

Request No. 9 of the Subpoena seeks, without limitation, "[d]ocuments you received from NYC Housing Preservation and Development regarding Housing Quality Standards Inspection and/or Reports for the Building, including Plaintiff's apartment". *Id.*

Both the requests in the instant Subpoena and the questioning in the portions of the deposition transcript Plaintiff attached constitute a fishing expedition that bears no relevance to the liability of Kahan, the only party against which liability is still at issue given Ransome's default, **Exhibit B** and Prestige's dismissal, **Exhibit D.** It is therefore clear that these requests for information and documents are not made in good faith and aim exclusively to allow Plaintiff to amend the Complaint against Prestige before the deadline.

Notably, none of Plaintiff's requests are limited to documentation only relevant to Plaintiff or any other aspect of her claims. **Exhibit G.** Plaintiff does not attempt to characterize any other tenant of Abyssinian or Ransome as related to Plaintiff or her claims in the Complaint in any way. *Id.* Thus, the demands are undeniably overly broad, and unreasonable. *Id.* They are also patently irrelevant to the claims asserted in the Complaint. *Id.*

On August 31, 2026, Prestige reached out to Plaintiff to meet and confer about the concerns about the instant subpoena, but received no response. **Exhibit E.** On September 10, 2026, Prestige called Plaintiff's counsel twice seeking once again to confer and followed up over email, but received no response, necessitating the filing of this Motion.

Given Plaintiff's continual refusal to cease his demands for undiscoverable and irrelevant information, Prestige was forced to file this instant Motion for Order pursuant to Fed.R.Civ.P. 45 quashing the Subpoena on the grounds that they are overly broad on their face and seek irrelevant information not pertinent to Plaintiff's claims.

## LEGAL ARGUMENT

## POINT I

## PLAINTIFF'S SUBPOENA TO ABYSSINIAN AND OTHER REQUESTS FOR IMPROPER DISCOVERY MUST BE QUASHED

Discovery is not unlimited. Pursuant to Fed.R.Civ.P. 26(b)(1), discovery must be "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action." Pursuant to Fed.R.Civ.P. 45(d)(3), courts must quash subpoenas where they require disclosures of protected matter, if no exception or waiver applies, or subjects a party to an undue burden. *Citizens Union of City of New York v Attorney Gen. of New York*, 269 F.Supp.3d 124, 139 (S.D.N.Y. 2017). In assessing this standard, courts weigh factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are

described and the burden imposed." *Id.*, 269 F.Supp.3d at 139 (internal quotations omitted). Determinations of these issues are committed to the discretion of the trial court. *See e.g., In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 68–70 (2d Cir.2003); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y.1996); *see also* Fed.R.Civ.P. 26 - 1970 Advisory Committee's Note (Rule 26 "confers broad powers on the courts to regulate or prevent discovery even though the materials sought are within the scope of [discovery under Fed.R.Civ.P.] 26(b), and these powers have always been freely exercised.").

The party seeking discovery bears the burden of proving that the information and documents sought are relevant and proportional to the needs of the case. *Citizens Union*, 269 F.Supp.3d at 140. A subpoena that "sweepingly pursues material with little apparent or likely relevance to the subject matter runs the greater risk of being found overbroad and unreasonable." *Concord Boat*, 169 F.R.D. 44 at 48.

As with Plaintiff's previous discovery demands addressed in Prestige's prior motion to quash, the Subpoena here imposes a clear undue burden, seeking information from Abyssinian that is completely irrelevant to Plaintiff's remaining surviving claims against Kahan. Plaintiff has proffered no evidence that reflects the relevance of the sought-after evidence as to other tenants to the instant matter. Further, the demand for the production of documents that containing information pertaining to other tenants of Abyssinian or Ransome is in no way formulated to obtain necessary or material discovery. The deposition transcript referred to in the Subpoena's demands clearly demonstrates that Plaintiff is knowingly engaging in a fishing expedition for irrelevant information, yet Plaintiff does not limit her requests to tailor them to her claims or instruct that the improper information should be removed or redacted before disclosure. Plaintiff surreptitiously seeks information has already been well established as improper at the discovery hearings on this

case while Prestige is not in the case and unable to object. **Exhibit "C"** p. 45. Thus, the breadth of the requests in the present Subpoena for documents completely unrelated to Plaintiff or her claims are overly broad, impermissibly irrelevant, and unduly burdensome on its face. Thus, the Subpoena is undeniably unenforceable and must be quashed in its entirety as a matter of law.

Plaintiff once again seeks to take advantage of the substantial amount of time that Prestige granted as a professional courtesy based on Plaintiff's counsel's professed personal obligations to seek these improper and undiscoverable materials during the interim period while Prestige is out of the case. Plaintiff should not be permitted to continue this fishing expedition to attempt to cure the pleading defect that resulted in dismissal of her claim against Prestige. Plaintiff's General Business Law § 349 claim against Prestige was dismissed because Plaintiff failed to establish that Prestige's alleged conduct was consumer-oriented—i.e., that it had the requisite broader impact on consumers at large. **Exhibit "D".** Again, Plaintiff impermissibly seeks to pursue discovery from Abyssinian concerning its other tenants rather than amend her complaint based on facts properly available to her in an obvious attempt to establish that Prestige allegedly engaged in similar conduct with other tenants, in what the Court has described as an improper "fishing expedition. **Exhibit "C"**, p. 45.

It must be reiterated that these requests are prejudicial because, despite the fact that Rule 26(b)(1) does not allow for discovery unrelated to a properly pleaded claim or defense, Plaintiff is attempting to develop evidence that it lacked when the Court dismissed the GBL § 349 claim in order to manufacture the broader consumer impact necessary to revive the claim. Courts in this District have recognized that discovery must be more than a mere fishing expedition, with the scope of permissible discovery informed by the allegations actually pleaded. *Tottenham v. Trans World Gaming Corp.*, 00 CIV. 7697 (WK), 2002 WL 1967023 (S.D.N.Y. June 21, 2002).

Once again, Plaintiff should not be permitted to circumvent those limitations simply because it has been given an opportunity to amend. As we pointed out in our prior Motion to Quash, Plaintiff is attempting to spend the amendment period developing an entirely new factual record concerning other tenants without Prestige's participation, and the present Subpoena is a clear attempt to bolster this record even further. The Court should decline to allow Plaintiff to cure the dismissed causes of action through discovery rather than through a properly supported amended pleading, and should therefore quash the present Subpoena.

Additionally, the provisions of the deposition transcript cited in the instant Subpoena evidence Plaintiff's patently improper attempts to directly seek information that Plaintiff acknowledges refers to "other tenants". Prestige is still in the dark about the full extent such information has been sought by Plaintiff. Therefore, Prestige also respectfully requests that Plaintiff be barred from using any material on tenants unrelated to this litigation improperly obtained, as evidenced in the deposition transcript attached to the instant Subpoena and the extent of which is still unknown to Prestige.

In the alternative, if the Court is inclined not to quash the Subpoena in its entirety, Prestige respectfully requests that it narrow the demands in the Subpoena to only seek information pertinent to Plaintiff.

**CONCLUSION**

For the foregoing reasons, Prestige's instant motion should be granted and an Order should be issued (1) quashing the Subpoena and barring Plaintiff from using surreptitiously obtained information irrelevant to the claims in the operative Complaint; and (2) awarding such other and further relief as the Court deems just and proper. In the alternative, Prestige respectfully requests that the Subpoena be narrowed to only seek information pertinent to Plaintiff,

Dated: New York, New York
September 11, 2026

Respectfully submitted,

FURMAN KORNFELD & BRENNAN LLP

By: /s/ *Rachel Aghassi*

Rachel Aghassi, Esq.
Sarah M. Igarashi, Esq.
*Attorneys for* PRESTIGE MANAGEMENT, INC.
88 Pine St. 32nd Floor
New York, New York 10005
Tel.: (212) 867-4100
FKB File No.: 314.064